LOMA LINDA UNIVERSITY, A CALIFORNIA CORPORATION, AKA LOMA LINDA UNIVERSITY DBA PARADISE SPA, APPELLANT, v. RICHARD E. ECKENWEILER, DAVE ROBINSON, J. T. ASHER, AND ANTHONY N. CUILLA, RESPONDENTS.

No. 6025

May 18, 1970                                      469 P.2d 54

*Jack J. Pursel,* of Las Vegas, and *Bruce E. Clark* and *Richard D. Dear,* of Los Angeles, California, for Appellant.

*Michael J. Wendell,* of Las Vegas, for Respondents.

**OPINION**

By the Court, THOMPSON, J.:

This is a suit to recover six months severance pay claimed by the plaintiffs, Eckenweiler, Robinson, Asher and Cuilla, to be due under an oral contract of employment with the defendant Loma Linda University. The district court entered judgment for the plaintiffs in the amounts of $15,000, $8,400, $5,400 and $4,800 respectively, with interest and costs. The University appeals contending that a contract for severance pay was never consummated. With this contention we agree. Accordingly, the determination below is reversed with direction to enter judgment for the defendant.

1. In 1966 and prior thereto, the University had loaned money to the developers of Paradise Spa in Clark County for the purpose of completing the development of that project which consisted of condominium units plus recreational and commercial facilities. Because of financial difficulties experienced by the developers, the University, in August 1966, assumed responsibility for operating and managing the Spa, and hired Eckenweiler as manager of the project at a monthly salary of $2,500 plus expenses for a term of four months. Eckenweiler, in turn, employed his own management team of Robinson, Asher and Cuilla. Robinson was to be paid $1,400 a month for his services, Asher $900 a month, and Cuilla $800 a month. Robinson was employed in September 1966 for a term of four months. Cuilla started work in December 1966 and Asher in February 1967. Neither Cuilla nor Asher were employed for a definite term. The employment of the four men was terminated on April 25, 1967.

When Eckenweiler was employed in August 1966, the subject of severance pay was not mentioned. Nor was that subject discussed between representatives of the University and the other members of the management team before they commenced work. Sometime during the latter part of October or the first part of November 1966, Eckenweiler initiated discussions with representatives of the University about severance pay

for himself and the others and other matters of concern to him. These discussions apparently were prompted by the possibility that the Spa might be sold and his team replaced by personnel selected by the purchaser. Negotiations on that subject and others continued until March 1967 at which time a formal, written employment agreement was prepared by counsel for the University and submitted to Eckenweiler. Paragraphs 6 and 7 of that proposed agreement provided:

"6. In the event this employment Agreement is terminated and the services of Manager dispensed with, other than for cause, prior to 18 months from the date hereof, University will pay as 'Severance Compensation' to Manager, the sum of $2,500.00 per month for each full month remaining under this Agreement up to a maximum of $15,000.00.

"7. University has employed the following named individuals to work exclusively on a full time basis on the Paradise Spa project, namely, Dave Robinson, Cranston Brown, Tony Cuilla and Joe Asher. University agrees, in the event any of these employees is discharged by the University, other than for cause, prior to the expiration of 18 months from the date hereof and in the interim has not been discharged by Manager or transferred to another job, each qualifying employee shall receive a month's wages based upon his wages without overtime during the month of February, 1967, for each full month less than 18 months remaining under this Agreement up to a maximum of six months."

Other important terms regarding the duties of Eckenweiler, additional compensation for him in the event the Spa or parts of it were sold, and other matters, were included in the proposed employment agreement. The proposed agreement was not signed by either party. Eckenweiler rejected it and suggested certain changes. Within several weeks thereafter the employment of Eckenweiler and his team was terminated.

The plaintiffs persuaded the district court that although the proposed employment agreement was not acceptable as a whole, there had been a meeting of the minds on the severance pay aspect and that portion of the proposed agreement should be enforced.

For the purposes of this opinion we shall assume first, that the evidence supports the trial court's view that there was, indeed, a meeting of the minds about severance pay, and second, that the plaintiffs'employment was terminated by the University without cause. In spite of these assumptions we are

compelled to hold that the plaintiffs cannot prevail as a matter of law.

2. When the proposed employment agreement was prepared by counsel for the University and submitted to Eckenweiler in March 1967, there was no employment contract in effect, oral or otherwise. The term of Eckenweiler's original employment, four months, had run its course. So had Robinson's, and Asher and Cuilla were hired by Eckenweiler without any understanding as to the duration of their employment. The proposed written agreement resulted from negotiations between Eckenweiler and the University, but was never consummated since Eckenweiler desired changes in it. This is simply a case where the University made a complete offer which Eckenweiler declined to accept. Even though certain terms of the offer were agreed upon, other important terms were not. Further negotiation as to such other terms was contemplated. In such circumstances there is no contract until agreement is reached on all terms under negotiation. 1 Corbin on Contracts § 29, p. 83. As the court observed in Upsal Stout Realty Co. v. Rubin, 192 A. 481 (Pa. 1937), "It is not unusual for persons to agree to negotiate with a view of entering into contractual relations and to reach an accord at once as to certain major items of the proposed contract and then later find that on other details they cannot agree. In such case no contract results." This is precisely what happened in the case at hand. Cf. Micheletti v. Fugitt, 61 Nev. 478, 134 P.2d 99 (1943), where a *complete* contract was made orally and enforced even though the parties contemplated signing a written memorial thereof later. See also Dolge v. Masek, 70 Nev. 314, 268 P.2d 919 (1954), where, although the unsigned writing did reflect the oral understanding of the parties, the agreement was not enforceable since the parties clearly contemplated consummation of a written agreement since real property interests could not be released otherwise.

Here, a complete oral contract was not made. Moreover, the parties contemplated consummation by written agreement. That agreement was prepared, submitted to Eckenweiler, but rejected by him. Accordingly, we reverse the judgment below and direct that judgment be entered in favor of the University.

COLLINS, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.