Argued and submitted March 31, affirmed June 16,
reconsideration denied August 5,
petition for review denied October 5, 1982 (293 Or 635)

PACIFIC PHOTOCOPY, INC.,
*Appellant,*

*v.*

CANON U.S.A., INC.,
*Respondent.*

(No. A7911-05278, CA A21092)

646 P2d 647

Robert J. Miller, Portland, argued the cause for appellant. With him on the briefs was Black, Kendall, Tremaine, Boothe & Higgins, Portland.

Don S. Willner, Portland, argued the cause for respondent. With him on the brief was Willner, Bennett, Bobbitt & Hartman, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff appeals from a judgment for defendant which was entered following presentation of plaintiff's evidence on the issue of liability only and a motion by defendant to dismiss plaintiff's case. The sole assignment of error is that the trial court erred in sustaining defendant's motion to dismiss.

Plaintiff brought an action to recover damages for defendant's breach of an alleged contract to appoint plaintiff an authorized dealer for defendant's photocopy products. The issue presented on appeal is whether a valid enforceable contract existed between the parties, notwithstanding that the written contract was signed by plaintiff but not by defendant and contained a specific provision requiring approval by defendant's executive office.

The essential facts are as follows:

Plaintiff and defendant had been engaged in negotiations for plaintiff to be appointed one of defendant's dealers in the metropolitan Portland area. The negotiations were in their final stages in August, 1979. On August 31, 1979, plaintiff signed a credit application, a purchase order from defendant for 25 machines and a dealership agreement. The agreement provided that:

"23. This agreement shall become effective only upon affixing the Dealer's signature, properly witnessed, followed by approval of this Agreement at the Executive Office of Manufacturer by its duly authorized representative.

"IN WITNESS WHEREOF, the parties have hereto caused this Agreement to be executed by their duly authorized officers.

"CANON USA, INC.

"By: _____

Title: _____

Dealer: Pacific Photocopy, Inc. - Oregon

By: Terry Newsom

Title: President "

Further, the agreement provided in paragraph 5 that:

"Dealer shall not be legally obligated to purchase the minimum quantities set forth in Schedule A or as they may be changed from year to year * * *."

and in Paragraph 6:

"Notwithstanding any provisions of this Agreement, Manufacturer shall not be required to fill any order placed by Dealer, and each of Dealer's orders is subject to acceptance by Manufacturer at its home office in the state of New York."

These documents were handed to defendant's District Sales Manager and its Regional Sales Manager, Ray Meyers. The dealership agreement was signed by plaintiff but not by defendant.

According to plaintiff, on September 4, plaintiff's credit was approved by defendant, and on September 5, defendant's district sales manager informed plaintiff that it was approved as a Canon dealer and that plaintiff's service manager should enroll in Canon's service school. These assertions were disputed by defendant's witnesses. On September 6, defendant's regional sales manager and national service manager signed documents to enroll plaintiff's service man in defendant's school. Plaintiff's service man was enrolled in the school on September 17, 1979, and completed the course on September 21, 1979. Defendant assigned a dealer number to plaintiff and placed plaintiff on its dealer mailing list. Plaintiff's evidence was that, in reliance upon defendant's representations that it was approved as a Canon dealer, plaintiff spent $252 to send its technician to Costa Mesa, California, for school and advertised itself as a Canon dealer in the telephone directory yellow pages.

On or about September 20, 1979, defendant's general manager in New York learned for the first time that plaintiff had an interest in a Los Angeles photocopy dealer that might be in a position to compete with the defendant's wholly owned subsidiary in that area. The general manager then refused to sign the agreement.

On September 25, 1979, Meyers phoned the president of plaintiff to inform him that defendant's headquarters office in New York had not approved the contract. The

refusal to approve was confirmed by defendant's vice president by phone on September 27, 1979, and by a letter of the same date sent by certified mail, return receipt requested. The agreement has never been signed by anyone for defendant, and defendant has never delivered any merchandise to plaintiff.

Plaintiff's complaint alleged, <em>inter alia:</em>

" * * * The defendant agreed to sell to the plaintiff and the plaintiff agreed to purchase from the defendant a minimum quota of 130 Canon photocopy machines each year. In consideration for the defendant's agreements the plaintiff promised to purchase not less than 20. of said required annual minimum in each calendar quarter; ordered 25 machines for immediate delivery and promised to pay the defendant $78,750.00 therefor * * *."

Plaintiff argues that (1) the signature of defendant's general manager was not necessary to make a contract, since there is substantial evidence from which a jury could have inferred that the contract was approved at the executive office of defendant by its duly authorized representative, and (2) the contract is not a contract for the sale of goods under the Statute of Frauds (ORS 72.2010),[1] because it specifically provides in Paragraph 5 that plaintiff is not legally obligated to purchase any goods and in Paragraph 6 that defendant is not required to fill any orders placed by plaintiff.

Defendant summarized its argument in reply as follows:

"(1) The parties intended that any agreement would be written, and that they would not be bound by an oral agreement.

"(2) Even if there was an oral agreement, it is unenforceable under the statute of frauds.

---

[1] ORS 72.2010(1) provides:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing."

"(3) Plaintiff cannot deny its statement of fact in the Complaint that there was a sale of goods."

It appears that the trial court, while concluding that there was evidence sufficient for the jury to find that there was an oral agreement found that the oral agreement was insufficient to comply with ORS 72.2010 and granted defendant's motion to dismiss for failure to comply with that statute.

For reasons which follow we conclude that plaintiff's contentions fail.

■ Assuming *arguendo* that the written agreement involved here is not a contract for the sale of goods within the provisions of ORS 72.2010, nevertheless by the terms of Paragraph 23 set out above the agreement was not to become effective until

"approval of this Agreement at the Executive Office of Manufacturer [defendant] by its duly authorized representatives."

This provision clearly shows that the parties to the agreement intended that any agreement between the parties would be written and that neither party would be bound until approval at the executive office of defendant in New York. Without that approval there could be no contract.

■ As we interpret the language of the written memorandum, the signature of an authorized person on behalf of defendant was necessary to approve the agreement. The document was written and contained a signature line for approval by defendant. Even though paragraph 23 does not specifically require a signature of defendant's authorized agent, it appears from the character and form of the document that the parties contemplated signatures by both parties to complete the agreement. In view of this express provision (Paragraph 23) plaintiff's argument that the signature of defendant's general manager was unnecessary because there was substantial evidence from which a jury could have inferred that the contract was approved by its duly authorized representative cannot be sustained. It is a fundamental rule of contract law that the provisions of an offer as to the place and manner of acceptance must be complied with. *Hogan v. Alum. Lock Shingle Corp.,* 214 Or

218, 329 P2d 271 (1958); Restatement (Second) of Contracts, § 60. When the evidence establishes that both parties contemplated a formal written contract together with written approval by the home office of the principal, approval in those terms cannot be dispensed with, at least under the facts at bar.

Both plaintiff and defendant place great reliance on *Howland v. Iron Fireman Mfg. Co.,* 188 Or 230, 213 P2d 177, 215 P2d 380 (1949), and assert that the other misconstrues that decision. *Howland* held, *inter alia,* that an oral dealership contract to sell defendant's automatic coal burners falls within the statute of frauds when it includes an agreement to sell goods. We do not reach the statute of frauds issue, and we need not resolve this point.

Affirmed.