TROPICANA HOTEL CORPORATION, a Dissolved Nevada Corporation; MITZI STAUFFER BRIGGS, as Trustee of TROPICANA HOTEL CORPORATION a Dissolved Nevada Corporation, and MITZI STAUFFER BRIGGS, Individually, Appellants and Cross-Respondents, *v.* NILA SPEER, Executrix of the Estate of Lloyd D. Speer, a/k/a DON SPEER, Deceased, Respondent and Cross-Appellant.

No. 13655

January 4, 1985        692 P.2d 499

*Oshins, Brown & Singer,* Las Vegas, for Appellants and Cross-Respondents.

*Morse-Foley,* and *Christopher H. Byrd,* Las Vegas, for Respondent and Cross-Appellant.

## OPINION

By the Court, GUNDERSON, J.:

This appeal arises out of the brief association of Donald Speer[1] with Tropicana Hotel. In July 1975 Mitzi Stauffer Briggs acquired a controlling interest in the Tropicana Hotel Corporation, the managing entity of Tropicana Hotel. Since she had no experience in the hotel or casino industry, Briggs looked for a competent general manager who could restore the hotel to its former prosperity. She offered the position to Donald Speer, general manager at the Desert Inn.

Speer indicated that he would accept the position only if, in addition to a generous salary, he could have equity in the Tropicana Hotel Corporation. After some preliminary discussions, Briggs invited Speer, his counsel and her counsel to her home in Atherton, California, in the hope of concluding an agreement. It is undisputed that agreement was reached on the terms of the employment contract; the parties could not agree, however, on how the stock should be transferred.

After Speer returned to Las Vegas, he left his position at the Desert Inn and began working as general manager at the Tropi-

---

[1]Donald Speer died while the proceedings below were pending. Nila Speer, his widow and the executrix of his estate, was substituted for him in the action.

cana Hotel. Two months later Briggs signed an employment agreement prepared by her attorneys according to drafts of the Atherton discussions, and forwarded it to Speer. Speer never signed the agreement. He testified at trial that his counsel advised him not to sign it until a satisfactory stock option agreement was prepared and signed by Briggs.

In March 1976 a culinary strike forced the hotel to close. Disagreements over hotel management developed between Speer and Briggs, and after two of Speer's trusted subordinates were fired by the executive committee, Speer left the hotel. The parties disagreed at trial over whether Speer had resigned or whether he had been terminated. Speer filed suit against the Tropicana Hotel Corporation, alleging that an oral employment contract reached at Atherton was breached by his termination without cause. He later amended his complaint to add a cause of action against Briggs for breach of an oral stock option agreement. The district court, sitting without a jury, found that binding oral agreements existed, and that Tropicana had breached the employment contract. It awarded Speer liquidated damages, as provided in the employment contract, for his termination without cause; however, it found that the statute of frauds rendered the stock option agreement unenforceable.[2] Both parties have appealed.

We turn first to the stock option transfer. The district court determined that the stock option agreement was unenforceable under NRS 104.8319(4), the securities statute of frauds. We need not decide here whether NRS 104.8319(4) applies to stock option agreements executed in connection with employment contracts, because our examination of the record compels us to conclude that no agreement on the transfer of stock was ever reached.

The record shows that at Atherton the parties merely agreed that Speer would receive $100,000 worth of points, or approximately 3.2% of Brigg's holding. The parties could not agree on the precise form of the transfer, because Speer wished to be left with $100,000 after the payment of his capital gains tax, and counsel could not work out the tax consequences to their satisfaction. Even after the meeting at Atherton, numerous drafts of proposed agreements circulated between counsel but were never satisfactory to both parties. When important terms remain unresolved, a binding agreement cannot exist. *See* Loma Linda Univ. v. Eckenweiler, 86 Nev. 381, 384, 469 P.2d 54, 56 (1970). Since the parties never reached a meeting of the minds on the transfer of

---

[2]The district court found that the statute of frauds did not preclude enforcement of the oral employment contract because there was a writing signed by Briggs, the party to be charged. NRS 111.220.

the stock options, we affirm, albeit on a different ground, the district court's decision against Speer on this cause of action.

We next turn to Tropicana's challenge to the district court's award of liquidated damages to Speer for breach of his oral employment contract. Because we conclude that there was no consummation of a binding agreement, we reverse judgment for Speer.

The record shows that during their negotiations the parties contemplated that any agreement concerning Speer's employment would become effective only when reduced to writing and signed by the parties.[3] At trial Speer as well as Briggs admitted that the terms of the proposed written agreement corresponded to the terms agreed on at Atherton. Nevertheless, on advice of counsel Speer decided not to sign the draft until Briggs signed a satisfactory stock option agreement. Clearly, Speer withheld his signature to pressure Briggs to consummate the stock option transfer, and his conduct is inconsistent with his assertion that the oral agreement reached at Atherton was intended to be immediately binding. Had the proposed written agreement been merely a memorialization of a binding oral contract, Speer's signature would not have been of sufficient legal significance to exert any influence on Briggs.

We have previously stated that since some measure of agreement must usually be reached before a written draft is prepared, the evidence that the parties intended to be presently bound must be convincing and subject to no other reasonable interpretation. Dolge v. Masek, 70 Nev. 314, 319, 268 P.2d 919, 921 (1954). In *Dolge* the language of the contract convinced us that the parties could not have intended to be presently bound, and here the conduct of Speer, the party seeking to enforce the alleged contract, compels the same conclusion.

A similar situation confronted us in Loma Linda Univ. v. Eckenweiler, 86 Nev. 381, 469 P.2d 54 (1970). Negotiations regarding plaintiff's employment contract continued during his

---

[3]This is shown by the testimony of Speer himself.

Counsel for Tropicana: Mr. Speer, when you left the Atherton meeting, was it your understanding that a written contract embodying the terms of your employment contract as well as the points would be drawn up and signed by the parties?
Speer: I did.

Counsel for Tropicana: Mr. Speer, it was always your intention, was it not, both preAtherton, at Atherton and postAtherton that you would have a written contract or that you would be protected as far as your position as general manager at the Tropicana Hotel; is that true?
Speer: That's true.

employment by the University. A written agreement was pre-
pared but rejected by the plaintiff. Neither party signed the
agreement. After plaintiff's employment was terminated, he
attempted to enforce an alleged oral agreement regarding sever-
ance pay. We held that even accepting the district court's view
that the parties had reached a meeting of the minds on the issue of
severance pay, judgment for plaintiff had to be reversed. The
proposed written agreement was an offer by the University which
plaintiff had declined to accept. Important terms remained unre-
solved and the oral agreement was incomplete; moreover, the
parties had contemplated consummation by written agreement
and plaintiff himself had rejected the written contract.[4] Similarly,
since Speer refused to sign the written draft and clearly demon-
strated his intent not to be immediately bound, no contract arose
between the parties.

Speer contends that the fact that he commenced his employ-
ment at the Tropicana Hotel before a written contract was even
prepared shows that he regarded the oral employment agreement
as binding. Generally, performance by a party after agreement
has been reached but before a writing has been prepared is
regarded as some evidence that the writing was only a memorial
of a binding agreement. *See* Micheletti v. Fugitt, 61 Nev. 478,
134 P.2d 99 (1943); 1 Corbin on Contracts § 30 (1963). How-
ever, where the evidence clearly shows that the party performing
did not consider the agreement to be binding, the fact that he
began performance does not compel a contrary conclusion.

Moreover, even assuming *arguendo* that a binding agreement
existed, Speer has not demonstrated that it was breached. The
district court determined that the termination of two of Speer's

---

[4]Speer argues that *Loma Linda* is distinguishable because the oral agree-
ment was incomplete while the district court found that he and Tropicana had
reached complete agreement on all terms of the employment contract.
Firstly, we are of the view that even if the oral agreement in *Loma Linda* had
been complete, the parties' expectation that the agreement would be consum-
mated by a writing and plaintiff's rejection of the written agreement were
sufficient to support the result. Additionally, the employment agreement
between Speer and Briggs can only be regarded as complete if it is severable
from the stock option transfer. The district court found that the two agree-
ments constituted separate contracts. In light of Speer's testimony that his
signature on the employment agreement was contingent on Briggs's signature
on a satisfactory stock option agreement, we find this determination puz-
zling. Even assuming the divisibility of the two proposed agreements, how-
ever, a binding contract never came into force because the parties
contemplated that the employment agreement would be formally executed
and Speer frustrated that expectation.

trusted associates by Briggs and the executive committee so undermined Speer's ability to perform his duties that it amounted to a constructive discharge. We do not find this theory persuasive. In spite of protracted negotiations, the continued employment of members of Speer's "team" was never suggested as a term of any proposed agreement. In the absence of such an understanding, the termination of the two men over Speer's objections cannot be regarded as an invasion of Speer's authority sufficient to amount to a constructive discharge. The cases cited by Speer in which a constructive discharge was found are inapposite. In Rudman v. Cowles Communications, Inc., 280 N.E.2d 867 (N.Y. 1972), plaintiff's contract provided that he was to be in charge of editorial decisions, yet he was made subordinate to the most junior editors. In Carlson v. Ewing, 54 So.2d 414 (La. 1951), the owner of a radio station systematically abused and fired employees and in other ways obstructed the general manager's efforts to run the station. The actions of Briggs and the executive committee simply do not rise to this level of interference.

We have reviewed the other contentions of the parties and have found them to be without merit. Accordingly, we affirm that part of the district court's decision denying Speer damages for breach of an alleged stock option agreement. We reverse judgment for Speer on the alleged employment agreement, and direct that judgment be entered in favor of appellants.

MANOUKIAN, C.J., SPRINGER and STEFFEN, JJ., concur.

SHEARING, D.J., dissenting in part:

I dissent because there is substantial evidence in the record to support the trial court's findings that there was a consummation of a binding agreement between Speers and Tropicana and that that agreement was breached by the Tropicana. The testimony quoted in the majority opinion is out of context and only a minute part of the testimony presented at trial. The majority has substituted its own findings of fact for that of the trial judge who had the opportunity to see and hear the witnesses and to judge their credibility.

I would affirm the district court's judgment awarding Speer damages for breach of the employment contract, as well as the district court's decision denying Speer damages for breach of an alleged stock option agreement.[1]

---

[1]The Governor designated The Honorable Miriam Shearing, Judge of the Eighth Judicial District Court, to sit in the place of THE HONORABLE JOHN C. MOWBRAY, Justice, who voluntarily disqualified himself. Nev. Const. art. 6 § 4.