JIM L. SHETAKIS DISTRIBUTING COMPANY, INC., DBA
SHETAKIS WHOLESALERS, INC., APPELLANT, *v.*
CENTEL COMMUNICATIONS COMPANY DBA CEN-
TEL BUSINESS SYSTEMS, RESPONDENT.

No. 18322

June 24, 1988

756 P.2d 1186

*Denton & Denton,* Las Vegas, for Appellant.

*Lionel Sawyer & Collins,* and *Todd Touton,* Las Vegas, for
Respondent.

## OPINION

*Per Curiam:*

Centel Communications Company ("Centel") believed that it

had formed a contract with Shetakis Wholesalers ("Shetakis") binding Shetakis to purchase $52,552.00 worth of specialized communications equipment from Centel. When Centel attempted to bill Shetakis for the equipment, Shetakis refused to pay, claiming that no contract had been formed. The trial court decided that a valid contract had been formed and awarded Centel $13,893.44 in liquidated damages.

Jim Shetakis is the president of Shetakis Distributing Company, doing business as Shetakis Wholesalers, Inc. Sometime prior to the summer of 1983, Jim Shetakis was contacted by a Centel representative who stated that he had a communications system that could improve Shetakis's data processing system. Jim Shetakis referred the Centel representative's call to Glenn Oderkirk, who was the data processing manager at Shetakis.

In the mid-summer of 1983, Oderkirk contacted David Markham, Centel's west division service center manager, to discuss the possibility of acquiring a communications system from Centel. After several in-person meetings between Oderkirk and Markham, Centel prepared a written proposal and presented it to Oderkirk.

In September of 1983, Centel furnished Shetakis with Centel's standard sales agreement. Paragraph Seven of the Centel Sales agreement stated that the agreement "binds Customer when it is executed by Customer and Centel when it is executed by Centel and delivered to Customer." That same month, Oderkirk personally delivered a Shetakis form purchase order ("first purchase order") to Centel's Markham at Markham's office.

The first purchase order was signed by Jim Shetakis and had typed on the bottom the following: "This purchase order is subject to the same terms & conditions of Centel Business Systems standard Sales Agreement." Relying on Paragraph Seven of the Centel sales agreement, it was Jim Shetakis's position that the first purchase order was not binding on Shetakis. The particular form used for the first purchase order was in fact ordinarily used by Shetakis for purchasing the merchandise that Shetakis would sell to its institutional customers; but it was not assigned a purchase order number by the computer as would ordinarily have been done, and the document was not used or intended to be used in the manner that these forms are ordinarily used in the normal course of Shetakis's business.

After reviewing the first purchase order, Centel declined to accept it because (1) it contained notations about a lease agreement which Centel had not discussed with Shetakis; (2) there were deletions which had not been initialed; and (3) two different typewriter prints could be discerned.

In early December of 1983, Centel received a second form purchase order from Shetakis ("second purchase order"). The

second purchase order, dated December 15, 1983, was signed by Shetakis's vice-president, Glenda Sue Beasley. Beasley testified that she did not believe the second purchase order was a binding offer by Shetakis; instead, she believed that her signature on the form was necessary merely to preserve the prices that had been quoted to Shetakis by Centel. The second purchase order contained a fictitious purchase order number[1] and, similar to the first purchase order, stated that: ''This purchase order is subject to the same terms and conditions of Centel Business Systems standard Sales Agreement.''

After receiving the second purchase order, Centel's president prepared and signed one of Centel's form sales agreements. The signed sales agreement recited that Shetakis's purchase order was attached and made a part of the agreement. The purchase order number appearing on the second purchase order was written on the blank line of the Centel sales agreement where the customer would ordinarily sign. On December 28, 1983, Centel delivered the Centel sales agreement signed by Centel's president—with the second purchase order attached to it—to Shetakis.

Since Centel had rejected the first purchase order—in apparent conformity with the restrictions on the manner of contract formation specified in Paragraph Seven of the Centel sales agreement— Jim Shetakis believed that Centel similarly would not treat the second purchase order as forming a binding agreement. Jim Shetakis testified that he believed that the purpose of having Beasley sign the second purchase order was merely to fix the prices on the equipment Shetakis was interested in.

Centel, however, took the position that delivery of the second purchase order, signed by Beasley, when attached to the Centel sales agreement, signed by Centel's president, consummated the negotiations between Centel and Shetakis. Believing Shetakis to be contractually bound, Centel committed itself to pay $26,948.00 to Trembly Associates for the equipment ordered by Shetakis. Centel also ordered an additional $1,750.00 worth of equipment from Conklin Equipment Corporation to satisfy Shetakis's order.

In February, 1984, Shetakis informed Centel that Shetakis was not certain it still wanted the equipment. Centel then invoiced

---

[1]Beasley testified that this was a ''dummy'' purchase order number. Real purchase orders are assigned by the computer and have six digits. The five digit ''dummy'' purchase order number on the second purchase order was really Shetakis's post office box number.

The presence of the fictitious purchase order number on the second purchase order, like the absence of any purchase order number on the first purchase order, indicates that Shetakis's use of the second purchase order in this case was not in the ordinary course of Shetakis's business.

Shetakis for the down payment on the equipment, only to be told by Beasley that Shetakis did not need the equipment.

Centel filed a complaint, claiming that Shetakis had "repudiated and breached" its contract with Centel and that Centel was entitled to $13,893.44, pursuant to the liquidated damages clause contained in the Centel sales agreement. The trial court ruled for Centel, awarding Centel $13,893.44 in liquidated damages and an additional $5,379.66 in interest, and this appeal followed.

We agree with Shetakis that where the circumstances indicate that a particular manner of contract formation is contemplated by the parties, a binding contract is not formed in the absence of compliance with the contemplated procedure. *See* Widett v. Bond Estate, Inc., 79 Nev. 284, 382 P.2d 212 (1963); Dolge v. Masek, 70 Nev. 314, 268 P.2d 919 (1954); *cf.* Pacific Photocopy v. Canon U.S.A., Inc., 646 P.2d 647 (Or.App. 1982) (provisions of offer relating to manner of acceptance must be complied with); Cochran v. Connell, 632 P.2d 1385 (Or.App. 1981) (offeror may restrict manner of acceptance if his intention to do so is clearly expressed); NRS 104.2206 (offer to make contract shall be construed as inviting acceptance in any reasonable manner *unless* otherwise unambiguously indicated by the language or circumstances); Restatement (Second) of Contracts sec. 60 (1981). Nevertheless, we are aware that some degree of agreement is usually manifested prior to the formation of a contract in the manner contemplated by the parties. As we have previously stated in this regard, where negotiations have yet to be consummated in the contemplated manner, if such prior manifestations of agreement are to be held to constitute binding contractual assent, "the evidence that the parties . . . intended presently to be bound should . . . be convincing and subject to no other reasonable interpretation." *Dolge*, 70 Nev. at 319, 268 P.2d at 921; *see also* Tropicana Hotel v. Speer, 101 Nev. 40, 43, 692 P.2d 499, 502 (1985).

In the present case, the circumstances indicate that a particular manner of contract formation was contemplated by the parties. That manner was expressed unambiguously in Paragraph Seven of the Centel sales agreement, which was provided to Shetakis at the initiation of negotiations between the parties. Paragraph Seven of the Centel sales agreement stated that it "binds Customer when it is executed by Customer and Centel when it is executed by Centel and delivered to Customer." We believe that Shetakis reasonably assumed that it would not be bound unless the Centel sales agreement was "executed by [the] Customer," that is by an authorized agent of Shetakis.

The Centel sales agreement was signed by Centel's president; however, it was not signed by an authorized agent of Shetakis. Since the Centel sales agreement was not signed by an authorized agent of Shetakis, the particular procedure for contract formation contemplated by both parties was not complied with. In the absence of such compliance, the evidence in this case that both parties intended to be presently bound is neither "convincing" nor is it "subject to no other reasonable interpretation." *Dolge,* 70 Nev. at 319, 268 P.2d at 921. We therefore hold that no legally binding contract between Shetakis and Centel was formed.[2]

Accordingly, we reverse the judgment of the trial court and remand this matter with instructions that judgment be entered for Shetakis.

---

[2]Shetakis's second purchase order stated that it was "subject to the same terms and conditions of Centel Business Systems standard Sales Agreement." The Centel sales agreement signed by Centel's president stated that Shetakis's purchase order was attached and made a part of the agreement.

We reject Centel's argument that the above language resulted in the incorporation by reference of the second Shetakis purchase order in the Centel sales agreement, obviating the need for the signature of an authorized agent of Shetakis on the Centel sales agreement. Even though the format of the Centel sales agreement clearly contemplated referencing attached documents, such as the second Shetakis purchase order, we find no reason to believe that this changed the effect of Paragraph Seven.