# IN THE SUPREME COURT OF THE STATE OF NEVADA

THE LAKESHORE HOUSE LIMITED
PARTNERSHIP, A NEVADA LIMITED
PARTNERSHIP; AND EMERSON
HEDGES, LLC, A NEVADA LIMITED
LIABILITY COMPANY,
Appellants,
vs.
BANK OF THE WEST, A CALIFORNIA
BANKING CORPORATION,
Respondent.

No. 78062

FILED

NOV 03 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a district court order granting partial summary judgment in a fraudulent transfer and breach of contract action. Second Judicial District Court, Washoe County; Bridget E. Robb, Judge.

Appellants Lakeshore House Limited Partnership and Emerson Hedges, LLC, argue that the district court abused its discretion when it failed to reconsider a prior order to grant partial summary judgment for respondent Bank of the West (the Bank).[1] Lakeshore and Emerson maintain that the order should have been reconsidered and summary judgment ultimately denied because there are genuine issues of material fact regarding the parties' alleged settlement agreement. We agree and therefore reverse the district court's summary judgment and remand for further proceedings.

---

[1]Appellants Harvey and Annette Whittemore (collectively, the Whittemores) were defendants below but voluntarily dismissed their appeal. *See Lakeshore House Ltd. P'ship v. Bank of the West*, Docket No. 78062 (Order Partially Dismissing Appeal, June 27, 2019). Accordingly, we only reference the Whittemores when necessary to give context to the factual or legal issues.

20-39971

*Factual and procedural history*

Following the commencement of this litigation in which the Bank asserted a claim for fraudulent transfer of real property in Douglas County, Nevada (the Glenbrook property) by the Whittemores to Lakeshore and Emerson, the parties entered into settlement negotiations from May through June 2016. During the negotiations, Emerson attempted to sell the Glenbrook property in order to finance a settlement. Relevant here, the proposed written settlement agreement contained a time-is-of-the-essence clause that required payment by the Whittemores, Lakeshore, and Emerson to the Bank "on or before June 24, 2016."

On June 6, 2016, the Bank emailed Lakeshore and Emerson, transmitting a settlement agreement that had been signed by the Bank. The Bank requested that all parties sign and return "a fully executed settlement agreement." On June 22, 2016, Lakeshore and Emerson communicated to the Bank that it had been unable to sell the Glenbrook property; therefore, it could not secure the funds to pay the settlement amount and requested that the parties renegotiate the settlement agreement. On June 27, 2016, the Bank rejected Lakeshore and Emerson's June 22 request to renegotiate. The Bank recounted that during a previous phone conversation, counsel for Lakeshore and Emerson described that all parties signed the settlement agreement but determined they would not deliver this signed copy "unless and until" they "were confident that the sale of the Glenbrook [p]roperty would close." The Bank disagreed with this position and requested "a fully executed" version for its records. The record before us shows that Lakeshore and Emerson did not deliver a fully executed version of the settlement agreement to the Bank until May 2017,

SUPREME COURT
OF
NEVADA

(O) 1947A

2

when they produced documents in their possession in compliance with the NRCP 16.1 (2017)[2] document disclosure requirements.

After the breakdown in settlement negotiations in 2016, the Bank moved to supplement its complaint against Lakeshore and Emerson to include a breach of contract claim under the alleged settlement agreement. Over Lakeshore and Emerson's opposition, the district court granted the Bank leave to amend its complaint and the Bank filed its second amended complaint seeking damages for breach of the settlement agreement. Thereafter, the Bank, seeking a source of payment on its unsecured claim, filed a motion for a prejudgment writ of attachment upon the Glenbrook property, or, alternatively, for a preliminary injunction to prevent Emerson from transferring or selling the property.

Lakeshore and Emerson answered the Bank's second amended complaint, denying the settlement agreement was enforceable and asserting counterclaims against the Bank for, among other claims, a declaration that "[n]o binding agreement exists." Lakeshore and Emerson later amended their counterclaim but did not substantively alter their underlying argument. Before filing its answer to Lakeshore and Emerson's counterclaim, the Bank moved for partial summary judgment. The Bank argued that "[t]he [s]ettlement [a]greement is a valid and binding contract," and Lakeshore and Emerson breached the contract when it failed "to pay

---

[2]We recently amended the Nevada Rules of Civil Procedure, which became effective on March 1, 2019. *See In re Creating a Comm. to Update and Revise the Nev. Rules of Civil Procedure*, ADKT 522 (Order Amending the Rules of Civil Procedures, the Rules of Appellate Procedure, and the Nevada Electronic Filing and Conversion Rules, Dec. 31, 2018). Because this case predates the effective date of the amendments to the NRCP, we cite to the version in effect at the time of this action.

the Bank . . . on or before June 24, 2016." However, the Bank neither rebutted nor challenged Lakeshore and Emerson's answers, affirmative defenses, and counterclaims. The Bank, instead, relied on the signed copy of the settlement agreement provided through Lakeshore and Emerson's NRCP 16.1 disclosures to support its claim that there was an enforceable contract.

The next month, the Bank filed a supplemental brief in support of its motion for a prejudgment writ of attachment against the Glenbrook property and attached the exhibits supporting its partial summary judgment motion. On that same day, the Bank answered Lakeshore and Emerson's first amended counterclaim in which it denied the allegations under the breach of contract counterclaim. Lakeshore and Emerson responded to the Bank's supplemental brief and requested that the district court disregard it because the late filing was prejudicial to them. Lakeshore and Emerson further contended that to have a prejudgment writ of attachment granted, the Bank must "establish that it is more likely than not to prevail on its claims *and* the [d]efendants' defenses and counterclaims." Further, Lakeshore and Emerson argued that "the Bank's briefing fails to meaningfully address" their numerous affirmative defenses and counterclaims.

The district court held a show cause hearing on whether to issue a prejudgment writ of attachment, but the district court refused to allow the parties to call witnesses or introduce other evidence. The district court also refused to permit the Whittemores to make an offer of proof. Following the hearing, the district court granted the Bank its prejudgment writ of attachment and found "that the [s]ettlement [a]greement is a valid and binding contract which was executed by all parties." However, the district

court failed to provide factual findings in its order that analyzed Lakeshore and Emerson's affirmative defenses or counterclaims.

Later, the district court found the settlement agreement enforceable and granted the Bank partial summary judgment on the breach of contract claim. In the district court's order, the court relied heavily on its holdings on the prejudgment writ of attachment and did "not re-address the validity of the [s]ettlement [a]greement . . . ." On the same day the district court granted partial summary judgment, Chase Whittemore was deposed and detailed that Lakeshore and Emerson did not accept the settlement agreement and would not permit their counsel to deliver the executed settlement agreement to the Bank because Lakeshore and Emerson did not believe there was a deal. Lakeshore and Emerson filed their motion for reconsideration and contended that the irregularity at the show cause hearing provided grounds for reconsideration because the district court disregarded the plain language of NRS 31.026 requiring an evidentiary hearing. Additionally, they argued that there was no acceptance of the settlement agreement and that the lack of delivery showed there was no present intent to be bound by the terms. Finally, Lakeshore and Emerson maintained that the district court did not consider Lakeshore and Emerson's other affirmative defenses prior to granting the Bank partial summary judgment.

The district court denied Lakeshore and Emerson's motion to reconsider because it "improperly argue[d] issues already disposed of by the [c]ourt; improperly raise[d] new arguments; and attempt[ed] to raise 'new evidence' that was available when the original motion was argued." Lakeshore and Emerson appeal.

On appeal, Lakeshore and Emerson contend the district court erred when it found the settlement agreement constituted a valid and enforceable contract and granted the Bank summary judgment on its breach of contract claim. Lakeshore and Emerson aver the Bank did not prove that all parties mutually assented to be bound to the agreement or that they consummated their agreement by delivering the signed contract. *See* 2 Richard A. Lord, *Williston on Contracts* § 6:10 (4th ed. 2007) ("As a general principle, at common law an acceptance, in order to be effective, must be positive and unambiguous."). Lakeshore and Emerson claim that had the district court permitted evidence and testimony at the show cause hearing for the prejudgment writ of attachment, they would have demonstrated, impliedly through the testimony of Chase Whittemore, that there was never an acceptance of the settlement agreement.

A district court's decision to grant summary judgment is reviewed de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). "Summary judgment is appropriate . . . when the pleadings and other evidence on file demonstrate that no genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law." *Id.* (second alteration in original) (internal quotation marks omitted). All evidence must be viewed in a light most favorable to the nonmoving party. *Id.* To withstand summary judgment, the nonmoving party cannot rely solely on general allegations and conclusions set forth in the pleadings, but must instead present specific facts demonstrating the existence of a genuine factual issue supporting the claims. *Id.* at 731, 121 P.3d at 1030-31; *see also* NRCP 56 (2005).

When a district court conducts a show cause hearing on a motion for a prejudgment writ of attachment, it must hold an evidentiary

hearing—not an oral argument. *See* NRS 31.026 ("The court at such hearing *shall* consider all affidavits, testimony and *other evidence presented* . . . ." (emphasis added)); *see also State of Nev. Emps. Ass'n, Inc. v. Daines*, 108 Nev. 15, 19, 824 P.2d 276, 278 (1992) ("'[S]hall' is mandatory unless the statute demands a different construction . . . ."). At the outset of the proceeding, the district court stated that the show cause hearing was "an oral argument, not an evidentiary proceeding." During the hearing, the Whittemores attempted to make an offer of proof, but the district court recounted that it was "not going to take the offer of proof" because the hearing was only an oral argument. Accordingly, the district court abused its discretion when it limited the hearing to oral argument only in contravention of the plain language of NRS 31.026. This is especially problematic because it had a cascading effect on the district court's determination related to whether the settlement agreement was valid and enforceable. *See May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005) ("Because a settlement agreement is a contract, its construction and enforcement are governed by principles of contract law. Basic contract principals require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." (footnote omitted)).

By limiting the show cause hearing to oral argument only, Lakeshore and Emerson were precluded from presenting any evidence or testimony in support of their claims and counterclaims, including the testimony of Chase Whittemore. As he later detailed in his deposition, he "never thought" there was a valid agreement and that the settlement agreement "was never delivered back to the bank." Chase further explained that the agreement was not valid "because I didn't want to deliver a copy of an agreement to somebody to tell them that there's a deal when there was

no deal." Additionally, because the settlement agreement contained a time-is-of-the-essence clause, it was a necessary condition for contract formation that the agreement be unambiguously accepted *before* June 24, 2016. The record before us evinces that the settlement agreement was signed but never delivered to the Bank prior to June 24. Thus, we conclude that a genuine issue of a material fact remains as to whether there had been an acceptance of a contract. *See Jim L. Shetakis Distrib. Co. v. Centel Commc'ns Co.*, 104 Nev. 258, 261, 756 P.2d 1186, 1188 (1988) (detailing that a contract must be unequivocally and unambiguously accepted).

Equally problematic is that the district court never considered Lakeshore and Emerson's answer, affirmative defenses, and counterclaims when it found there was a valid and enforceable contract in granting the prejudgment writ of attachment. *See* NRS 31.026 ("The court . . . shall make a determination of the probable validity of the plaintiff's underlying claim against the defendant."). This was compounded by the district court's reliance on its prejudgment writ of attachment findings and conclusions to then grant partial summary judgment to the Bank. *See May*, 121 Nev. at 672-73, 119 P.3d at 1257 ("Contract interpretation is subject to a de novo standard of review. However, the question of whether a contract exists is one of fact, requiring this court to defer to the district court's findings unless they are clearly erroneous or not based on substantial evidence." (footnote omitted)).

Because there remain genuine issues of material fact as to whether there was a valid and enforceable settlement agreement, we conclude that the district court erred in granting the Bank partial summary judgment. *See Wood*, 121 Nev. at 729, 121 P.3d at 1029.

*The district court abused its discretion in denying Lakeshore and Emerson's motion for reconsideration*

Lakeshore and Emerson moved for reconsideration of the district court's grant of partial summary judgment on several bases, including pursuant to NRCP 59(a), which the district court denied. Because the district court considered the motion "on its merits, . . . we may consider the arguments asserted in the reconsideration motion in deciding" this appeal. *Arnold v. Kip*, 123 Nev. 410, 417, 168 P.3d 1050, 1054 (2007). "Although not separately appealable as a special order after judgment, an order denying an NRCP 59(e) motion is reviewable for abuse of discretion on appeal from the underlying judgment." *AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010). "While review for abuse of discretion is ordinarily deferential, deference is not owed to legal error." *Id.*

In moving for reconsideration, Lakeshore and Emerson argued the district court's summary judgment order was in error because the district court relied on its holdings from the show cause hearing on the prejudgment writ of attachment at which the district court refused to provide Lakeshore and Emerson with "the opportunity to present live testimony and other evidence." They further proffered Chase Whittemore's deposition, which occurred on the same day the court entered its summary judgment order, in support of their motion.

Having concluded that the district court abused its discretion by failing to conduct an evidentiary hearing on the prejudgment writ of attachment and by failing to make any determinations on the validity of Lakeshore and Emerson's affirmative defenses and counterclaims pursuant to the plain language of NRS 31.026, we further conclude that the district court erred when it denied the motion for reconsideration without

considering the factual disputes as to whether there had been an acceptance of a contract.[3] *See AA Primo Builders*, 126 Nev. at 582, 245 P.3d at 1193 ("Among the basic grounds for a Rule 59(e) motion are correct[ing] manifest errors of law or fact . . . ." (alteration in original) (internal quotation marks omitted)); *see also* NRCP 59(a) (2017) (detailing "[i]rregularity in the proceedings" as a ground for altering or amending a judgment); *Shetakis*, 104 Nev. at 261, 756 P.2d at 1188 (detailing that a contract must be unequivocally and unambiguously accepted).

For these reasons, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for further proceedings consistent with this order.[4]

_____, J.
Gibbons

_____, J.
Hardesty

---

[3]The district court's order denying reconsideration is also perplexing because, in that same order, the district court denied the Whittemores' summary judgment motion on their counterclaim concerning the enforceability of the settlement agreement, finding that "there is a genuine issue of material fact concerning whether or not the Whittemores consented to allow the [s]ettlement [a]greement to be released to the Bank, and how that consent affects application of the [s]ettlement [a]greement to the Whittemores."

[4]Lakeshore and Emerson moved to discharge the prejudgment writ of attachment, which the district court denied. Following Lakeshore and Emerson's appeal of this denial, we affirmed and concluded that "because there is now a final judgment, . . . the issue regarding how the district court applied NRS Chapter 31 is now moot." *Lakeshore House Ltd. P'ship v. Bank of the West*, Docket No. 75501 (Order of Affirmance, April 25, 2019). On remand, nothing in this order disturbs that conclusion.

cc: Hon. Bridget E. Robb, District Judge
Carolyn Worrell, Settlement Judge
Robertson, Johnson, Miller & Williamson
Gunderson Law Firm
Washoe District Court Clerk

Supreme Court
of
Nevada

(O) 1947A

CADISH, J., concurring:

I concur in the result only. I do not agree with the majority that partial summary judgment should have been denied, or reconsideration of the order granting partial summary judgment should have been granted, based on a question of fact as to whether there had been an acceptance by appellants of the settlement agreement at issue. However, I do agree that partial summary judgment should have been denied, or reconsideration granted, based on the defense of impracticability. Accordingly, the judgment of the district court should be reversed and the case remanded.

Neither the appellants' opposition to the motion for prejudgment writ of attachment, their statements at the hearing on same, nor their opposition to the motion for partial summary judgment argued that there was no acceptance of the contract or that the contract was not valid. Moreover, no evidence was presented to support this theory, and even the affidavits of Chase Whittemore and appellants' counsel attached to the opposition to the partial summary judgment motion acknowledged that the parties had reached a settlement agreement but instead disputed the terms thereof and obligations thereunder. The later presentation of an affidavit and deposition testimony of Mr. Whittemore with the motion for reconsideration did not provide a valid basis to reconsider the court's decision on this issue, as such testimony was not new evidence that could not have been presented with the opposition brief, and it thus did not warrant reconsideration. *See Moore v. City of Las Vegas*, 92 Nev. 402, 405, 551 P.2d 244, 246 (1976) (holding that a district court should only grant a motion for reconsideration where "*new* issues of fact or law are raised supporting a ruling contrary to the ruling already reached" (emphasis

added)); *see also* NRCP 59(a)(1)(D) (providing that a "court may, on motion, grant a new trial" where "newly discovered evidence material for the party making the motion that the party could not, with reasonable diligence, have discovered and produced at the trial"); NRCP 60(b)(2) (providing that a "court may relieve a party . . . from a final judgment" where "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial"); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 n.6 (9th Cir. 1994) (holding that, regarding a motion to reconsider, "[e]vidence is not newly discovered if it was in the party's possession at the time of summary judgment or could have been discovered with reasonable diligence"). Moreover, the court's reliance on its prior ruling on the prejudgment writ of attachment does not justify reversal as it was appellants' burden to present evidence demonstrating a genuine issue of material fact with its opposition to the partial summary judgment motion, rather than purportedly relying on the ability to present such evidence at the future attachment hearing. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1030-31 (2005) (holding that the nonmoving party must present "specific facts demonstrating the existence of a genuine factual issue" to survive summary judgment (internal quotation marks omitted)). This is particularly true since its brief on the attachment motion and the discussion at the attachment hearing about whether evidence would be permitted never referenced the theory that the agreement was never accepted. For these reasons, I disagree with the majority's conclusion that reversal is warranted based on a genuine issue of material fact as to the acceptance of the agreement.

However, appellants did argue in their opposition to the motion for partial summary judgment that they discovered after signing the

settlement agreement that the contemplated release of the lis pendens by the Bank before the closing of the sale of the Glenbrook property would not clear title as all parties had expected and believed. Instead, the public allegations made by the Bank in its claims for fraudulent transfer prevented any title companies from issuing the clean title insurance needed for the sale to close, even though the Bank's claims were going to be dismissed and released if the transaction proceeded as contemplated. While the district court rejected the prevention doctrine defense because the lis pendens was known when the settlement agreement was entered and did not prevent appellants from tendering the settlement payment, it did not consider whether the doctrine of impracticability would excuse appellants' performance. The Restatement (Second) of Contracts section 261 (Am. Law Inst. 1981) provides,

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.[1]

While the lis pendens had been recorded and was known before the contract was entered, the inability to obtain clean title insurance and the resulting inability to complete the sale of the Glenbrook property did not become

---

[1]We have previously cited approvingly comment b to this section of the Restatement, in discussing the defenses of impossibility and impracticability. *Cashman Equip. Co. v. West Edna Assocs., Ltd.*, 132 Nev. 689, 701, 380 P.3d 844, 852 (2016).

known until thereafter.[2] Appellants presented evidence that the sale was a basic assumption on which the contract was made as all parties understood that was the only possible source of funds to make the settlement payment and drafted the settlement agreement in explicit contemplation of payment being made out of that escrow. Moreover, this defense is designed to apply in circumstances where the contract does not explicitly make performance conditional on the occurrence of the event. *Id.* at cmt. a ("Even though a party, in assuming a duty, has not qualified the language of his undertaking, a court may relieve him of that duty if performance has unexpectedly become impracticable as a result of a supervening event."). Thus, the district court's holding that the agreement itself did not make performance contingent upon the sale would not preclude application of this doctrine. Under the circumstances, this evidence precluded summary judgment against the appellants on the breach of contract claim.

For all of these reasons, I concur in the result, as the district court's judgment should be reversed and the case remanded for further proceedings.

_____, J.
Cadish

---

[2]To the extent this was an event that occurred before the contract was entered, section 266 of the Restatement would still allow a defense of impracticability if appellants had no reason to know of the inability to get clean title insurance and thus close the sale before the contract was entered. Restatement (Second) of Contracts § 266 (Am. Law Inst. 1981).