In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2183

CRYSTAL ELUSTRA and CHRISTINE LOPEZ,
as Next Friend of MORIAH ELUSTRA and
NAJATI ELUSTRA,

*Plaintiffs-Appellants,*

*v.*

TOM MINEO and BRAD FRALICH,
individually and doing business as
BUFFALO WILD WINGS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 3162—**John W. Darrah**, *Judge.*

ARGUED SEPTEMBER 23, 2009—DECIDED FEBRUARY 9, 2010

Before FLAUM, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* On the surface, this appeal presents a straightforward question: did the district court err when it concluded that the parties reached an enforceable oral agreement to settle their dispute? But we

cannot reach that question unless the appellants can overcome several procedural hurdles. The underlying case was brought by Crystal Elustra and her mother Christine Lopez, who appeared as next friend of Crystal's younger sisters, Moriah Elustra and Najati Elustra (both minors). The suit arose out of an argument that erupted on July 22, 2007, over the bill that the Elustra girls and some friends owed at the Buffalo Wild Wings restaurant, which is owned by Brad Fralich. Before things settled down, the police had been called and the girls were arrested on charges of disorderly conduct and curfew violations. Those charges were ultimately dropped, paving the way for this action against Frankfurt Police Officer Tom Mineo, Fralich, and Buffalo Wild Wings. The Elustras asserted that Officer Mineo had violated their civil rights and that Fralich had falsely imprisoned them. Moriah Elustra also complained about injuries to her head and wrists that she suffered during the course of the arrest.

Shortly after the suit was filed, the parties initiated settlement discussions. Magistrate Judge Morton Denlow presided over a two-hour settlement conference, the details of which we provide below. He concluded that the parties reached an oral settlement at the end of that conference and recommended that the district court enter judgment dismissing the suit pursuant to the agreement. The district court did so. Although the court proceedings were not as smooth as they might have been, we see no error in the district court's decision, and we therefore affirm.

**I**

The settlement conference before Judge Denlow took place on November 21, 2008. The Elustras attended the conference with their attorney, Michael Conway. Defendants were present only through counsel. During the conference, defendants presented a global settlement offer of $6,000 in exchange for a release of all claims. What happened next is disputed, but it appears that Judge Denlow communicated this offer to the plaintiffs and their attorney, and they accepted the offer. The settlement conference was off the record, but Judge Denlow later reported that "agreement was reached."

Before anyone had a chance to commit the terms of the agreement to writing, Morad Elustra—the father of the Elustra girls and a nonparty—asked to speak with Conway. The two men began to argue, and the conversation ended with Morad telling Conway that the family would find another lawyer. The entire family then re-entered the courtroom, gathered their coats, and left; they pointedly ignored warnings that it was in their best interest to stay and participate in the hearing.

At that point, the defendants orally moved to enter judgment dismissing the case with prejudice, in accordance with the settlement agreement, and Judge Denlow announced that he would rule immediately. He confirmed that an agreement had been reached and indicated that everyone (in particular the plaintiffs) had understood the settlement and that the process had been a fair one. Conway was present for this hearing and continued to speak for the Elustras, despite the exchange with their

father. Judge Denlow concluded with a recommendation to the district court to "enforce the settlement"—by which he meant to dismiss the case with prejudice in accordance with the agreement the parties had reached. On December 3, 2008, the district court held a brief hearing. Conway appeared for the plaintiffs, notwithstanding Morad's effort to terminate his representation. (The record does not indicate whether Crystal Elustra or Lopez shared Morad's dissatisfaction with Conway.) Conway told the court, without elaboration, that plaintiffs' recollection was that there was no agreement; he did not mention the confrontation with Morad. Relying on Judge Denlow's report, the district court entered an order on December 11, 2008, granting the defendants' motion to dismiss with prejudice.

On December 29, 2008, Lopez filed a terse, handwritten *pro se* motion to vacate and reinstate the claims. With new counsel, the Elustras supplemented Lopez's motion on January 7, 2009. Interpreting the January 7 filing as a motion for relief from final judgment under Rule 60(b) (because it was filed after the expiration of the 10-day period for Rule 59(e) motions), the district court denied the motion on April 2, 2009. The Elustras now appeal.

**II**

The Elustras have asked this court to decide whether the district court correctly found that the parties reached a binding settlement agreement, under which the case would be dismissed with prejudice in exchange for a global payment of $6,000. The defendants, however,

argue that we cannot review that decision directly. In their view, the only question properly before us is whether the district court abused its discretion when it denied the motion to reconsider. Thus, there are at least two preliminary questions before us: first, was the district court correct to treat the January 7 filing as the first motion to reconsider, and thus one filed under Rule 60(b), or did it have before it a timely Rule 59(e) motion, thanks to Lopez's December 29 filing; second, if we are to use the December 29 motion as our point of reference, was it effective to postpone the 30-day period for filing a notice of appeal? If the answer to that is yes, then we may reach the merits of the dispute over the settlement agreement.* Otherwise, we would consider only the question whether the district court abused its discretion in rejecting plaintiffs' request for reconsideration.

A

Although the defendants never raised the issue, we were concerned about Lopez's apparent effort directly to represent, without counsel, both her minor daughters and her adult daughter when she filed the December 29 motion. We therefore requested supplemental briefing

---

* On December 1, 2009, amendments to the Federal Rules of Civil Procedure altering certain time limits took effect. All of the relevant events in this case occurred before that date. Since the amendments are not retroactive, we apply the Federal Rules as they existed at the time.

on this question. Normally, representative parties such as next friends may not conduct litigation *pro se*; pleadings may be brought before the court only by parties or their attorney. See 28 U.S.C. § 1654 (providing that "parties may plead and conduct their own cases personally or by counsel"); FED. R. CIV. P. 11(a) (requiring that every motion be signed by an attorney or a party proceeding *pro se*). See also *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830-31 (7th Cir. 1986) (*per curiam*). Lopez is neither a party nor an attorney. This means that her December 29 motion may have been utterly without legal significance.

The first question we must address is whether we should look to state or federal law to resolve this problem. On the one hand, FED. R. CIV. P. 17(b) provides that "capacity to sue" is defined by state law. On the other hand, federal courts are entitled to use their own procedures, whether the case is one arising under federal law (as this one was, in part) or it is one based on another ground such as supplemental jurisdiction (as this one also was, in part) or diversity of citizenship. See *Hanna v. Plumer*, 380 U.S. 460 (1965). Our problem has less to do with capacity to sue than it does with the right to act in court, which is normally a matter regulated by the rules of professional conduct. Federal courts have the inherent authority to adopt their own rules in this field, and the Northern District of Illinois has done so. See N.D. ILL. LOC. R. 83.10 (2009) (general bar local rule governing admission to practice before the district court); N.D. ILL. LOC. R. 83.55.5 (2009) (unauthorized practice of law); N.D. ILL. LOC. R. 83.58.1 (2009) (bar admission

and disciplinary matters). All of this suggests that even though the ultimate issue before us concerns a settlement agreement, which is a matter governed by state law, it is federal law that dictates whether Lopez was entitled to act for one or more of her three daughters in the way that she did.

Even though federal law controls, this is the kind of question for which state law might provide useful guidance. It is common for federal law to borrow principles from state law, especially when there is a benefit to having a uniform answer within a particular state on a certain topic. See generally *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988); *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943). The ability of a parent to represent a child's interests is a question that arises frequently in state court. And when we look for general guidance to Illinois law, it turns out that a number of Illinois state court decisions offer support to the Elustras. See *Applebaum v. Rush Univ. Med. Ctr.*, 899 N.E.2d 262, 266 (Ill. 2008) (stating that the nullity rule, which invalidates complaints filed by a nonparty, "should be invoked only where it fulfills its purposes of protecting both the public and the integrity of the court system from the actions of the unlicensed, and where no other alternative remedy is possible"); *Pratt-Holdampf v. Trinity Med. Ctr.*, 789 N.E.2d 882, 887-89 (Ill. App. Ct. 2003) (reinstating a complaint improperly filed *pro se* on behalf of an estate to avoid the statute-of-limitations bar when the plaintiff was represented by counsel at every stage since filing the complaint); *Janiczek v. Dover Management Co.*, 481 N.E.2d 25, 26-27 (Ill. App. Ct. 1985) (declining to

invalidate a complaint filed by a disbarred attorney because doing so would "penalize an innocent party" and "would overlook the fact that the party did secure the services of a licensed attorney to represent him at trial"). Taken together, these cases suggest that an Illinois court would not dismiss a nonparty's filing out of hand; instead, it would distinguish between a filing that merely allows the party to go forward and more general prosecution of the lawsuit.

The question for us is whether there is comparable flexibility in the general rule that a person may appear in the federal courts only *pro se* or through counsel. One consequence of the normal rule is that a next friend may not, without the assistance of counsel, bring suit on behalf of a minor party. See *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); *Meeker v. Kercher,* 782 F.2d 153, 154 (10th Cir. 1986) (*per curiam*) ("Under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."). Similarly, a non-attorney parent may not argue an appeal *pro se* on behalf of her child. See *Navin v. Park Ridge Sch. Dist. 64,* 270 F.3d 1147, 1149 (7th Cir. 2001). This rule is designed to protect the interests of the minor party; in addition, it "jealously guards the judiciary's authority to govern those who practice in its courtrooms." *Myers v. Loudoun County Pub. Schs.,* 418 F.3d 395, 400 (4th Cir. 2005).

The rule is not ironclad, however. There are, for example, some exceptions for particular kinds of proceedings. Thus, parents may bring claims *pro se* on behalf of their children in an effort to secure social security benefits. See *Machadio v. Apfel,* 276 F.3d 103, 106-08 (2d Cir. 2002). See also *Winkelman v. Parma City Sch. Dist.,* 550 U.S. 516, 535 (2007) (explicitly not reaching the issue whether parents may litigate claims on behalf of their children *pro se* under the Individuals with Disabilities Education Act (IDEA)). To our knowledge, no comparable exception has ever been recognized for a lawsuit based on § 1983 or general state tort law.

But the question before us is not such a sweeping one. Lopez did not file this action as next friend without the assistance of counsel, and, with the exception of the period between December 3, 2008, and January 7, 2009, she did not proceed *pro se.* At least until December 3, she was represented by Conway, and by January 7 she had secured replacement counsel. The narrow question is thus whether the motion that she lodged with the court on December 29 on behalf of at least two of her three daughters, while she was in the process of lining up new counsel and while the 10-day clock that applied at the time for Rule 59(e) motions was ticking, is a nullity because they did not yet have replacement counsel.

If the December 29 motion was a timely Rule 59(e) motion, then the time for taking an appeal from the district court's judgment dismissing the case on the basis of the settlement did not begin to run until the motion was denied, and we can reach the merits of that

order. If, on the other hand, the first cognizable motion was the one filed by counsel on January 7, then it was too late to extend the time for filing a notice of appeal under FED. R. APP. P. 4(a)(4)(iv) and (vi) (as they read prior to December 1, 2009), and we may review only the disposition of the motion to reconsider.

In this connection, it is important to recall that the point of the rule forbidding a next friend to litigate *pro se* on behalf of another person is to protect the rights of the represented party. Discussing the application of the general rule outside the child-party setting, we observed that "[m]any good reasons exist for the strict adherence to this rule, not the least of which is that a party may be bound, or his rights waived, by his legal representative." *Lewis,* 784 F.2d at 830. This concern is even stronger in the context of a minor or other person who is unable to speak for herself. Here, however, the minors had no ability to file their own Rule 59(e) motion. If that motion had indeed been ill-advised, counsel would have said so in the January 7 filing. What actually happened, however, was that counsel effectively ratified the earlier filing. If we were to override that action, we would be harming the minors' interest in a way that subverts the purpose of the rule, just because the family could not obtain counsel during the short period permitted for a Rule 59(e) motion.

Remedial considerations also support a decision to give effect to the December 29 motion. Many of the cases that reject parents' pleadings filed *pro se* on behalf of their children acknowledge that the appropriate

remedy is to allow the child to re-litigate the case with counsel. See, *e.g., Cheung,* 906 F.2d at 61-62 (remanding child's claim litigated by a non-attorney parent for retention or appointment of counsel, or, alternatively, for dismissal without prejudice). See also *Lewis,* 784 F.2d at 831 (invalidating the notice of appeal and brief filed by a nonparty, non-attorney but allowing the appellant to file a proper notice of appeal and to brief the court of appeals *pro se* or through counsel). The Second Circuit explicitly took remedy into account in a decision in which it declined to vacate the injunction obtained by a parent litigating *pro se* on behalf of a child. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,* 297 F.3d 195, 201 (2d Cir. 2002) ("It is hardly in the best interest of [the child] to vacate an injunction that inures to his benefit so that he may re-litigate this issue below with licensed representation in order to re-secure a victory already obtained."). The choice before us is more stark: we must treat the motion as valid or bar the Elustras from challenging the underlying settlement agreement on appeal. While we were willing to direct such a harsh outcome in *Navin,* that was a case where the parent pursued the appeal *pro se* on behalf of the child through oral argument. Here, within a week of Lopez's motion, the Elustras once again had counsel, and they have proceeded appropriately ever since.

The Elustras have presented additional arguments in support of their position, including one that draws an analogy between the Rule 59(e) motion and a formal notice of appeal, but we see no need to consider them in depth. We note only that while, on the one hand, FED.

R. App. P. 3(c)(2) provides that "[a] *pro se* notice of appeal is considered filed on behalf of the signer and the signer's spouse and minor children (if they are parties), unless the notice clearly indicates otherwise," on the other hand this court held that a notice of appeal filed by a *pro se* parent on behalf of his child was ineffective as to the child. *Navin,* 270 F.3d at 1149 ("The notice of appeal is signed only by [the non-custodial parent] and therefore is ineffective to seek review on behalf of [the child]; the district court's dismissal of [the child's] claim therefore is conclusive, and the appeal proceeds with [the parent] as the only appellant."). If we were to attempt an analogy to notices of appeal, we might also consider whether there is some way to provide for renewal of the motion by counsel. See *United States v. A.L.,* Nos. 09-2460, 09-2546, and 09-2461 (7th Cir., June 24, 2009) (order dismissing appeals without prejudice, subject to renewal by appellate counsel); *cert. denied, Lundeby v. Bruinsma,* 130 S.Ct. 254 (2009). But that has already happened here, through counsel's January 7 motion.

Under the circumstances of this case—that is, where the plaintiffs had counsel through the issuance of a judgment, the plaintiffs were briefly without counsel during the very limited time allotted for a Rule 59(e) motion, the next friend filed a Rule 59(e) motion *pro se* on behalf of the minor children, and then counsel was retained to conduct the Rule 59(e) proceedings and any subsequent appeal of the judgment—we conclude that the December 29 motion should not be disregarded just because it was not filed by counsel. (We note that no

one has argued that Crystal Elustra, who was an adult at all times, should be excluded from any benefits conferred by that motion; in light of our ruling on the merits, we have no need to explore her situation in greater detail.)

B

The next question is whether Lopez's December 29 filing was otherwise sufficient as a Rule 59(e) motion. The first hurdle is the time allotted to file such motions (we reiterate, under the version of the rules then prevailing). The district court entered judgment enforcing the settlement agreement on December 11, 2008. Excluding Saturdays, Sundays, and holidays, the last day of the 10-day period fell on Friday, December 26. The clerk's office was closed on that date, however, and so under FED. R. CIV. P. 6(a)(3), the deadline for the motion fell on the next weekday, December 29, 2008. Lopez's *pro se* motion was therefore timely. The court denied that motion on April 2, 2009, and the Elustras (through counsel) filed their notice of appeal on April 30, 2009. This was within the 30 days permitted by FED. R. APP. P. 4(a)(1)(A).

Even if the December 29 motion was timely, however, defendants argue that it was too vague to satisfy Rule 59(e) and to permit the Elustras to rely on the April 2 denial of the motion as the starting point for their notice of appeal. This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of FED. R. CIV. P. 7(b)(1) do not postpone the 30-day period for filing a notice of appeal, even if the party supple-

ments the motion with additional detail after the 10-day window has expired. See *Martinez v. Trainor,* 556 F.2d 818, 819-21 (7th Cir. 1977). Rule 60 motions also must satisfy Rule 7(b)(1) within the 10-day period, if they are to postpone the time for filing a notice of appeal. See *Allender v. Raytheon Aircraft Co.,* 439 F.3d 1236, 1240-41 (10th Cir. 2006) (noting that FED. R. APP. P. 4(a)(4)(A) applies only to properly filed motions).

Rule 7(b)(1) requires that motions must: "(A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." FED. R. CIV. P. 7(b)(1). See *Martinez,* 556 F.2d at 820 (stating that a motion must include "reasonable specification" to be proper under Rule 7(b)(1)(B) and thus under FED. R. APP. P. 4(a)(4)(A)). Lopez's handwritten motion was entitled "Motion to vacate and Reinstate"; it read as follows, in its entirety:

> I never aggred [*sic*] to settlement vacate order Dec 11-08 and reinstate case
>
> [signed] C. Lopez
>
> 12-21-08

Defendants argue that this motion fails to satisfy Rule 7(b)(1). But it is hard to see how this could be so. The motion complies with each element of Rule 7(b)(1): it is in writing; it states the grounds for relief (plaintiffs did not agree to the settlement); and it states the relief sought (vacate the order and reinstate the case). The purpose of Rule 7 is to provide notice to the court and the opposing party, and that is exactly what Lopez's

motion does. We are satisfied that the December 29 motion complied with Rule 7(b)(1) and thus postponed the 30-day appeal period. We may now, at last, turn to the merits of the district court's decision.

## III

This court reviews an order dismissing with prejudice on the basis of a settlement for an abuse of discretion. *Newkirk v. Vill. of Steger,* 536 F.3d 771, 773-74 (7th Cir. 2007). Whether there was an agreement among the parties is an issue of law that we review *de novo. Id*.

Under Illinois law, a settlement is valid if there is an offer, acceptance, and a meeting of the minds. *Dillard v. Starcon Int'l Inc.,* 483 F.3d 502, 506 (7th Cir. 2007). The parties do not dispute that the defendants made an offer. The Elustras argue that there was neither acceptance nor a meeting of minds. They also argue that the district court violated Local Rule 17.1 and erred by refusing to hold an evidentiary hearing before ruling on their motion to vacate. None of these claims has merit.

## A

The Elustras press most strongly the argument that there is no evidence that they accepted the settlement agreement. It is true that the settlement conference was held off the record, making our review more difficult. But the absence of a record does not necessarily invalidate the settlement agreement, even though every-

one's job is easier if there is a contemporaneous record. See *Gevas v. Ghosh*, 566 F.3d 717, 719 (7th Cir. 2009) ("[W]e have encouraged judges presiding over settlement conferences to dictate to a court reporter their understanding of settlement terms and make sure that the parties agree on the record to those terms."). If the conference is off the record, the parties assume the risk that the judge's recollection of the events might differ from their own. The fact that oral agreements are enforceable (and have been for centuries under the common law) illustrates why it was so unwise for the Elustras to storm out of the courtroom just as Judge Denlow was preparing to review the purported agreement.

Judge Denlow placed on the record his own description of what had happened at the settlement conference immediately after the conference concluded. He summarized his recollection as follows:

> I felt that they were fair negotiations, that the parties had a complete understanding of what took place, and they so signified that to me and indicated that both sides had the advice of counsel, were represented by able counsel in these proceedings and agreement was reached.

Conway, ostensibly representing the plaintiffs at that time, did not object. The Elustras themselves (along with Lopez and Morad Elustra) had already left the courtroom, and so they were unable to controvert the judge's account.

Now, the Elustras want to convince us that they did not accept the offer. They offer the affidavits of Crystal

Elustra, Najati Elustra, and Christine Lopez, each of whom states that she did not agree to the settlement. But there is a dearth of contemporaneous evidence that might corroborate this account. Pointing to their fight with Conway and their unceremonious exit from the courtroom does not help their cause. Post-acceptance conduct does not retract an earlier acceptance. The simplest explanation of their behavior is buyers' remorse, expressed not by any of the plaintiffs or even Lopez, but by the nonparty father, Morad Elustra.

The Elustras have no evidence that the magistrate judge or Conway bullied them into the settlement, nor can they show that they did not understand the terms of the deal. The only evidence—Judge Denlow's statement that "the parties had a complete understanding of what took place"—supports the opposite conclusion. It is also worth noting that the Elustras' estimated net recovery from the settlement apparently exceeds the cost of their medical bills from the original incident.

Admittedly, Judge Denlow's use of the passive voice in his statement ("agreement was reached") leaves some ambiguity about whether the plaintiffs or their lawyer manifested the acceptance. But this is civil litigation, and parties are bound to the actions of their chosen agent, even for such an important matter as a settlement. Given the record we have before us, the district court had no choice but to confirm the magistrate judge's finding that the Elustras—directly or through their lawyer—accepted the agreement.

B

The Elustras also argue that there was no meeting of the minds because the material terms were not "definite and certain." *Dillard,* 483 F.3d at 507 (citing *Quinlan v. Stouffe,* 823 N.E.2d 597, 603 (Ill. App. Ct. 2005)).This is because, they say, the settlement did not identify the proportion of $6,000 that would go to each defendant. But it did not need to do this. Parties often negotiate and agree to a global settlement, and these plaintiffs had framed their own settlement demands in global terms. We find that the material terms were definite and certain: defendants would pay $6,000 to the Elustras in exchange for their dismissal of the lawsuit.

The Elustras further argue that the parties' failure to complete the magistrate judge's settlement checklist means that no meeting of the minds could have occurred. If they had stated that no agreement would be final until it was in writing, or until the checklist was completed, we would have a different case. But they did not. The oral agreement covered all material terms, even if it did not address everything on the generic checklist.

C

The Elustras next argue that there was no binding settlement because the district court failed to comply with Local Rule 17.1, which says, "Any proposed settlement of an action brought by or on behalf of an infant or incompetent shall not become final without written approval by the court in the form of an order, judgment

or decree." N.D. ILL. LOC. R. 17.1 (2009). The district court's December 11, 2008, order called upon the parties (including Christine Lopez as the mother and next friend of the minor plaintiffs) to execute a settlement agreement. But later, in its order of April 2, 2009, dismissing the plaintiffs' motion to vacate, the district court decided that the December 11 order satisfied Local Rule 17.1.

In the Elustras' opinion, the December 11 order could not have sufficed, because the final settlement documents had not been drafted at that time. But that begs the question: if there was an enforceable oral agreement settling the case as of November 21, then it does not matter what was or was not in writing as of December 11. And in any event, wholly apart from the fact that it is not at all clear that the remedy for a violation of Local Rule 17.1 should be rescission of an otherwise regular settlement agreement, we are not persuaded that any violation of the rule occurred. As we have said, the parties agreed to the material terms of their settlement on November 21, and those were the terms that the court approved on December 11. We defer to the district court's understanding of its own rules. See *Jessup v. Luther*, 227 F.3d 993, 999 n.5 (7th Cir. 2000) (holding that this court reviews a district court's enforcement of its own rules only for abuse of discretion). The district court found that it had complied with Local Rule 17.1, and we find no abuse of discretion in that finding. Finally, even if the December 11 order was somehow lacking for purposes of Local Rule 17.1, we note that the rule has no time limit. Thus, the district court's

order of April 2, 2009, could also have satisfied the rule. Either way, Local Rule 17.1 is no bar to enforcement of the settlement agreement.

## D

Last, the Elustras argue that the district court abused its discretion when it did not hold an evidentiary hearing before ruling on their motion to vacate and reinstate claims. Whether to hold a hearing, however, was a matter entrusted to the court's discretion, and we see no abuse of that discretion here. The court had a record, affidavits from the plaintiffs, and briefs from all parties. That was enough.

The judgment of the district court is AFFIRMED.