AA PRIMO BUILDERS, LLC, A NEVADA LIMITED LIABILITY COMPANY, APPELLANT, *v.* BERTRAL WASHINGTON AND CHERI WASHINGTON, RESPONDENTS.

No. 53983

AA PRIMO BUILDERS, LLC, A NEVADA LIMITED LIABILITY COMPANY, APPELLANT, *v.* BERTRAL WASHINGTON AND CHERI WASHINGTON, RESPONDENTS.

No. 54471

December 30, 2010                                                  245 P.3d 1190

---

*Gibbs, Giden, Locher, Turner & Senet LLP* and *Becky A. Pintar*, Las Vegas, for Appellant.

*Henness & Haight* and *Michael D. Haight* and *Jay A. Kenyon*, Las Vegas, for Respondents.

Before Hardesty, Douglas and Pickering, JJ.

## OPINION

By the Court, Pickering, J.:

Appellant AA Primo Builders, LLC appeals the dismissal of its suit to recover money allegedly due from respondents Bertral and Cheri Washington on a 2005 patio remodel job. The dismissal came in 2009, more than three years into the litigation. It was based on the Secretary of State having revoked AA Primo's charter to do business as a Nevada limited liability company, effective December 1, 2008. AA Primo asked the district court for a stay to give it time to make the annual filings needed to reinstate its charter, but the district court refused, instead granting the Washingtons' summary judgment motion. AA Primo next filed a timely motion under NRCP 59 asking the district court to vacate the judgment of dismissal, because by then it had succeeded in reinstating its charter. Again, the district court refused relief, and it also awarded the Washingtons their fees and costs. This appeal followed.

We reverse. Dismissal was too harsh a penalty for AA Primo's default in annual fees and filings due the Secretary of State. Administrative revocation of a domestic limited liability company's charter suspends the entity's right to transact business, not its ability to prosecute an ongoing suit. *See* NRS 86.274(5); NRS 86.505. Under NRS 86.276(5), moreover, reinstatement retroactively restores the entity's right to transact business; it is "as if such right had at all times remained in full force and effect." Thus, AA Primo's suit should not have been dismissed and, having been dismissed, should have been reinstated once AA Primo's charter was. Finally, before dismissal, the district court should have given AA Primo the brief stay it requested to seek charter reinstatement.

## I.

Before the merits, we must address the Washingtons' threshold challenge to the timeliness of AA Primo's appeal and, hence, our jurisdiction. AA Primo did not file its notice of appeal until the district court denied its "motion to amend order," asking to vacate the judgment of dismissal and reinstate the suit based on its reinstated charter.[1] If AA Primo's "motion to amend" qualified as "a motion under Rule 59[(e)] to alter or amend the judgment," it tolled the time to file the notice of appeal, and AA's appeal is timely. NRAP 4(a)(4)(C). If AA Primo's motion did not qualify as an NRCP 59(e) tolling motion, the notice of appeal was untimely, and we lack jurisdiction. *See* NRCP 4(a)(1) ("Except as provided in [NRAP] 4(a)(4), a notice of appeal must be filed . . . no later than 30 days after [service of] written notice of entry of the judgment or order appealed from").

An NRCP 59(e) motion does not have to win on the merits to have tolling effect under NRAP 4(a)(4)(C). The formal requirements are minimal. "A motion to alter or amend the judgment [must] be filed no later than 10 days after service of written notice of entry of the judgment." NRCP 59(e). It must also satisfy NRCP 7(b) and be "in writing, . . . state with particularity [its] grounds [and] set forth the relief or order sought." *See United Pac. Ins. Co. v. St. Denis*, 81 Nev. 103, 106-07, 399 P.2d 135, 137 (1965) (citing NRCP 7(b) and NRCP 59(e)); *see Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010) (a single-sentence motion meeting Fed. R. Civ. P. 7's requirements and asking to vacate a judgment qualified as tolling under the federal counterparts to

---

[1]The district court addressed AA Primo's lapsed charter in the context of the Washingtons' motion for summary judgment under NRCP 56. It concluded that AA Primo lacked "standing," requiring "DISMISS[AL] without prejudice" of its suit. AA Primo's lapsed charter properly raised an issue of capacity, not standing, *see In re Krause*, 546 F.3d 1070, 1072 n.2 (9th Cir. 2008), and we question whether the issue would not more properly have been addressed under NRCP 17 (addressing the capacity of parties to sue or be sued) or NRCP 25 (addressing the substitution of parties in the event of death, incompetency, or transfer of interest) than by a "dismissal without prejudice" under NRCP 56. *See Bader Enterprises, Inc. v. Olsen*, 98 Nev. 381, 384-85, 649 P.2d 1369, 1371 (1982) (applying NRCP 17(b) to resolve a challenge to a foreign corporation's capacity to litigate), *overruled on other grounds by Executive Mgmt. v. Ticor Title Ins. Co.*, 118 Nev. 46, 50 n.8, 38 P.3d 872, 874 n.8 (2002); *compare Robt. Pierce Co. v. Sherman Gardens*, 82 Nev. 395, 400-01, 419 P.2d 781, 784-85 (1966) (approving proceeding by way of "suggestion of corporate dissolution"), *with Payne v. Security Savs. & Loan Ass'n, F.A.*, 924 F.2d 109 (7th Cir. 1991) (applying the federal counterpart to NRCP 25(c) to substitute a dissolved corporation's successor in interest). *See also* NRCP 17(a) (providing for a reasonable time after objection for the joinder or substitution of the real party in interest similar to procedure approved in *Executive Management*).

NRCP 59 and NRAP 4(a)(4)(C)). But beyond this, NRCP 59(e) does not impose limits on its scope.

NRCP 59(e) and NRAP 4(a)(4)(C) echo Fed. R. Civ. P. 59(e) and Fed. R. App. P. 4(a)(4)(A)(iv), and we may consult federal law in interpreting them. *See Coury v. Robison*, 115 Nev. 84, 91 n.4, 976 P.2d 518, 522 n.4 (1999). Because its terms are so general, Federal Rule 59(e) "has been interpreted as permitting a motion to vacate a judgment rather than merely amend it," 11 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2810.1, at 119 (2d ed. 1995), and as "cover[ing] a broad range of motions, [with] the only real limitation on the type of motion permitted [being] that it must request a substantive alteration of the judgment, not merely correction of a clerical error, or relief of a type wholly collateral to the judgment." *Id.* at 121 (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169 (1989); *Buchanan v. Stanships, Inc.*, 485 U.S. 265 (1988)). Among the "basic grounds" for a Rule 59(e) motion are "correct[ing] manifest errors of law or fact," "newly discovered or previously unavailable evidence," the need "to prevent manifest injustice," or a "change in controlling law." *Id.* at 124-27.

By these standards, AA Primo's post-judgment "motion to amend order" qualifies as an NRCP 59(e) motion to alter or amend judgment with tolling effect under NRAP 4(a)(4)(C). The motion was in writing, invoked NRCP 59, asked to vacate the judgment of dismissal, and appended proof that the charter, for want of which AA Primo's suit was lost, had been restored. It urged the district court to consider NRS 86.276(5), which provides that reinstatement of an administratively revoked charter "relates back to the date on which the company forfeited its right to transact business . . . as if such right had at all times remained in full force and effect." And it argued that NRS 86.276(5) and AA Primo's reinstated charter provided a "compelling legal basis . . . to amend" the judgment and avoid "manifest injustice."

It is hard to imagine a post-judgment motion that would qualify for tolling under NRCP 59(e) and NRAP 4(a)(4)(C) if AA Primo's did not. Nonetheless, the Washingtons dispute whether, as "a thinly-veiled motion for reconsideration," the motion tolled for AA Primo. As support, they quote the last sentence of local EDCR 2.24(b), which provides, "A motion for reconsideration does not toll the 30-day period for filing a notice of appeal from a final order or judgment." But the Washingtons' own authority defeats them. They ignore the first sentence of EDCR 2.24(b), which restricts the "motion[s] for reconsideration" the rule covers to motions "seeking reconsideration of a ruling of the court, *other than*

*any order which may be addressed by motion pursuant to NRCP 50(b), 52(b), 59 or 60."* (Emphasis added.) Thus, by its terms, EDCR 2.24(b) excludes motions for reconsideration under NRCP 59(e) and has no effect on NRAP 4(a)(4)(C). Indeed, as a local district court rule it could not be otherwise, since NRCP 83 prohibits local rules that are inconsistent with the NRCP, while NRCP 81(a) provides that the NRAP govern "[a]ppeals from a district court to the Supreme Court of Nevada."

The Washingtons' argument does find a foothold, however, in the Nevada cases opining that a motion for reconsideration, even though timely seeking substantive alteration of a judgment, may not qualify as an NRCP 59(e) tolling motion. *Compare Able Electric, Inc. v. Kaufman*, 104 Nev. 29, 31-32, 752 P.2d 218, 220 (1988) ("We are not persuaded by [respondent's] attempt to convert [appellant's] motion to alter or amend into a non-tolling motion for rehearing"; oddly basing this determination on the fact that "[t]he district court did not consider any new evidence in arriving at its decision to deny [appellant's] motion to alter or amend"), *with Alvis v. State, Gaming Control Bd.*, 99 Nev. 184, 186 n.1, 660 P.2d 980, 981 n.1 (1983) ("A review of the [post-judgment] motion . . . reveals that [appellant] merely sought reconsideration of the district court's earlier order dismissing the petition for judicial review. It cannot reasonably be construed as a motion to alter or amend the judgment pursuant to NRCP 59(e)."); *see Nardozzi v. Clark Co. School Dist.*, 108 Nev. 7, 8 n.1, 823 P.2d 285, 286 n.1 (1992) (citing *Alvis*, 99 Nev. at 186 n.1, 660 P.2d at 981 n.1, and enlarging its holding to this: "A motion for rehearing cannot reasonably be construed as a motion to alter or amend the judgment pursuant to Rule 59(e)."). But these cases do not explain the features that distinguish a motion to alter or amend from one to reconsider a judgment, much less the rationale for the distinction. And tracing the cases back to their source, *Whitehead v. Norman Kaye Real Estate*, 80 Nev. 383, 395 P.2d 329 (1964), *cited in Alvis*, 99 Nev. at 186 n.1, 660 P.2d at 981 n.1, only adds to the mystery, because in *Whitehead*, NRCP 59(e) was neither argued nor addressed; both *Whitehead* and its follow-along case, *Arrate v. Nevada National Bank*, 89 Nev. 55, 56, 506 P.2d 86, 86 (1973), concerned the predecessor to local EDCR 2.24(b), discussed above, and its relationship to then-NRCP 73(a), a predecessor to NRAP 4. *See Whitehead*, 80 Nev. at 384-85, 395 P.2d at 329-30; *Arrate*, 89 Nev. at 56, 506 P.2d at 86 (citing *Whitehead*).

To some extent, the distinction may have been result-driven, spurred by the desire to save an appellant who filed the notice of appeal too early or too late for jurisdiction to attach under the unforgiving appellate rules formerly in place. Until we adopted what

is now NRAP 4(a)(6),[2] a party who filed a notice of appeal before decision of a tolling motion needed to file a second notice of appeal once the motion was decided; if this wasn't done, the notice of appeal was untimely unless the post-judgment motion was deemed nontolling. *See Nardozzi*, 108 Nev. at 8 n.1, 823 P.2d at 286 n.1. On the other hand, a party who waits to file the notice of appeal until a post-judgment motion is decided risks being too late if the motion turns out to be nontolling. *See Able Electric*, 104 Nev. at 31-32, 752 P.2d at 220 (citing *Alvis*, 99 Nev. 184, 660 P.2d 980). *See also Averhart v. Arrendondo*, 773 F.2d 919, 920-21 (7th Cir. 1985) (discussing the pre-amendment confusion with respect to Fed. R. Civ. P. 59 and Fed. R. App. P. 4(a)(4) and noting that "unless a litigant has a pretty good understanding of how Rule 59 of the procedure rules interacts with Rule 4 of the appellate rules, he is apt to fall into the same hole into which [the appellant in that case] disappeared"); 16A C. Wright, A. Miller, E. Cooper & C. Struve, *supra*, § 3950.4, at 392-96 (discussing the liberalizing amendments to Fed. R. Civ. P. 59 and Fed. R. App. P. 4(a)).

Although the distinction between motions to reconsider and motions to alter or amend may have once afforded flexibility, today it serves no purpose except to put an appellant who misjudges which category a post-judgment motion falls into at risk. " 'In order to avoid confusion, and to prevent harsh results for unwary parties,' " courts elsewhere, interpreting state and federal rule cognates to NRCP 59(e) and NRAP 4(a)(4)(C), " 'have generally held that, regardless of its label, . . . . a motion to reconsider, vacate, set aside, or reargue [a final judgment] will ordinarily be construed as [a] Rule 59(e) motion[ ] if made within ten days of entry of judgment.' " *Lieving v. Hadley*, 423 S.E.2d 600, 603 (W. Va. 1992) (quoting 6A James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 59.12[1] at 59-265 (June 1989)), *abrogated on other grounds by Walker v. Doe*, 558 S.E.2d 290 (W. Va. 2001); *Bowen v. E.I. duPont de Nemours and Co.*, 879 A.2d 920, 921-22 (Del. 2005) (recognizing a motion for reargument as a motion to alter or amend under Delaware Rule 59(e) with tolling effect); *Anderson v. Oceanic Properties, Inc.*, 650 P.2d 612, 616 (Haw. Ct. App. 1982) (a motion for reconsideration of a judgment qualifies as a motion to alter or amend under Hawaii Rule 59(e) and has tolling effect); *see* 11 C. Wright, A. Miller & M. Kane, *supra*, § 2810.1, at 122 n.8 (collecting cases holding that Rule 59(e) encompasses motions for reconsideration of a judgment).

---

[2]NRAP 4(a)(6) provides in pertinent part that "[a] premature notice of appeal does not divest the district court of jurisdiction" and that, unless the premature appeal has already been dismissed, a premature "notice of appeal shall be considered filed on the date of and after entry of the order, judgment or written disposition of the last-remaining [tolling] motion."

To continue to maintain our arcane, occasionally treacherous distinction between motions to alter or amend a judgment, which toll, and motions to reconsider a judgment, which do not, is not only contrary to settled law elsewhere, it is antithetical to *Winston Products Co. v. DeBoer*, 122 Nev. 517, 134 P.3d 726 (2006). In *Winston Products*, we declared as an overarching rule that "[o]ur interpretation of [modern] NRAP 4(a)(4) tolling motions should reflect our intent to preserve a simple and efficient procedure for filing a notice of appeal" and "not be used as a technical trap for the unwary draftsman." *Id.* at 526, 134 P.3d at 732 (quotation omitted). Accordingly, we hold that so long as a post-judgment motion for reconsideration is in writing, timely filed, states its grounds with particularity, and "request[s] a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment," 11 C. Wright, A. Miller & M. Kane, *supra*, § 2810.1, at 121, there is no reason to deny it NRCP 59(e) status, with tolling effect under NRAP 4(a)(4)(C). To the extent *Whitehead*, *Alvis*, and their progeny hold differently, they are abrogated by *Winston Products* and therefore disapproved.

We thus reject the Washingtons' challenge to our jurisdiction and now turn to the merits.

## II.

The substantive question on this appeal is whether a Nevada limited liability company whose charter is revoked, then reinstated, may litigate a pending suit to conclusion. The answer is yes, for three separate, independently sufficient reasons. First, the right to "transact business" that is forfeited on charter revocation does not normally include an LLC's capacity to sue and be sued. Second, reinstatement restores the entity's capacity to conduct itself as a limited liability company retroactively to the date of revocation; this includes the right to litigate pending cases to conclusion. Finally, dismissal should not be ordered in cases of this kind without giving the entity a brief stay, if requested, to pursue reinstatement of its charter.

## A.

AA Primo was formed under NRS Chapter 86 in 2001 and continuously maintained itself as a domestic limited liability company in good standing until December 1, 2008, when the Secretary of State deemed it in default of its annual fee and filing obligations under NRS 86.263 for the preceding year. NRS 86.274(2) states the consequence of being deemed in this kind of administrative de-

fault: "the charter of the company is revoked *and its right to transact business is forfeited*." (Emphasis added.) But Chapter 86 does not define "transact business." Applying the de novo review appropriate to questions of entity capacity, *Executive Mgmt. v. Ticor Title Ins. Co.*, 118 Nev. 46, 49, 38 P.3d 872, 874 (2002), we thus must decide whether the "right to transact business" that a Nevada limited liability company forfeits when its charter is revoked includes the ability to sue and be sued.

The Ninth Circuit Court of Appeals certified a variant of this question to us in *In re Krause*, 546 F.3d 1070 (9th Cir. 2008), which involved a domestic corporation that lost its charter and its right to "transact business" under Nevada's similarly worded corporations code provision, NRS 78.175(2). (The certified question went unanswered because the parties stipulated to dismiss the suit, *In re Krause*, Docket No. 52578 (Order Dismissing NRAP 5 Proceeding, May 26, 2009).) In framing the question, the Ninth Circuit noted dictionary definitions of "business" ("a usually commercial or mercantile activity engaged in as a means of livelihood") and "transact" ("to carry on the operation or management of"), and concluded that the phrase "transact business" in NRS 78.175(2) was certifiably ambiguous:

> Some corporations are primarily in the business of collecting debts and/or filing lawsuits. But most corporations are primarily engaged in some other business. . . . The term "transact business" probably could be construed to include pursuing litigation . . . . Nevertheless, . . . we cannot conclude that it must necessarily be so construed.

*Krause*, 546 F.3d at 1075 (quoting *Merriam-Webster's Collegiate Dictionary* 167, 1327 (11th ed. 2005)) (footnote omitted).

AA Primo's business is construction, not litigation. It comprises two members, a husband and wife, who formed the entity to do small residential remodeling jobs. The suit involved an account receivable for a patio remodel job. Using the dictionary definitions suggested in *Krause*, the "right to transact business" that AA Primo forfeited should not have included its ability to see this suit through to the end.

Subsection 5 of the revocation statute confirms our dictionary-based reading of "transact business" in the context of a Nevada limited liability company that has lost its charter. NRS 86.274(5) states that "the same proceedings may be had" with respect to a *revoked* entity's property and assets as NRS 86.505 permits with respect to a *dissolved* entity:

> If the charter of a limited-liability company is revoked and the right to transact business is forfeited, all of the property and assets . . . must be held in trust by the managers or, if none,

by the members of the company, *and the same proceedings may be had with respect to its property and assets as apply to the dissolution of a limited-liability company pursuant to NRS 86.505 . . . .*

NRS 86.274(5) (emphasis added). Addressing *dissolved* entities, NRS 86.505 says that, since the right to sue and be sued is integral to winding up, it survives dissolution:

> *The dissolution of a limited-liability company does not impair any remedy or cause of action available to or against it . . .* arising before its dissolution and commenced within 2 years after the date of dissolution. *A dissolved company continues as a company for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or nature by or against it and of enabling it* gradually to settle and close its business, [and] *to collect and discharge its obligations,* to dispose of and convey its property, and to distribute its assets, *but not for the purpose of continuing the business for which it was established.*

NRS 86.505 (emphasis added). With the possible exception of an LLC whose "business" is litigation—say, a law firm or a collection agency—NRS 86.274(5) and NRS 86.505 thus seem to permit a domestic LLC to sue and be sued despite a revoked charter.[3] *See also Gale v. Carnrite,* 559 F.3d 359, 363-64 (5th Cir. 2009) (under NRS 86.274 and NRS 86.505 a cause of action held by a Nevada LLC did not abate on charter revocation and was assignable).[4]

Against the statutory text, the Washingtons argue that AA Primo ceased to exist—died—when its charter was revoked, meaning everything it was involved in, including litigation, stopped. If equating an entity's end with a human being's death ever had currency, *see* Phillip Marcus, *Suability of Dissolved Corporations—A Study in Interstate and Federal-State Relationships,* 58 Harv. L. Rev. 675, 677 (1945) (this comparison "appear[s] to represent only an uncritical search for analogies" and is specious), it has none today under modern statutes that provide, inter alia, for dissolved entities to wind up their affairs, *see* NRS 86.505, for per-

---

[3]*Clipper Air Cargo v. Aviation Products,* 981 F. Supp. 956, 958 (D.S.C. 1997), inferred a similar result from the corporations code analogues to NRS 86.275 and NRS 86.505 (NRS 78.175 and NRS 78.585). We leave for another day the significance, if any, of the language differences between the corporations code and the limited liability company statutes concerning the proceedings that may be had following charter revocation.

[4]Further supporting this conclusion is NRS 86.5483, which, like the dissolution statute, NRS 86.505, made applicable to revocation by NRS 86.274(5), excludes "[m]aintaining, defending or settling any proceeding" from the definition of "transacting business" for foreign LLCs.

manently revoked entities to be revived even after the passage of years, NRS 86.580; *see Redl v. Secretary of State*, 120 Nev. 75, 85 P.3d 797 (2004), and for a revoked entity's charter to be reinstated retroactively, NRS 86.276(5). *See Penasquitos v. Superior Court (Barbee)*, 812 P.2d 154, 160 (Cal. 1991) (an entity's dissolution should not be seen "as its death, but merely as its retirement from active business") (also citing *Seavy v. I.X.L. Laundry Co.*, 60 Nev. 324, 329-30, 108 P.2d 853, 855 (1941) (to similar effect), *overruled on other grounds by Turpel v. Sayles*, 101 Nev. 35, 37, 692 P.2d 1290, 1291 (1985)). AA Primo survived revocation of its charter; the only real issue is whether its lawsuit did.

The Washingtons' backup argument for dismissal proceeds from a misreading of Chapter 86's "[g]eneral powers" statute, NRS 86.281. The Washingtons' brief cites NRS 86.281(1), parenthetically describes it as "providing that *only* 'organized and existing' companies may 'sue and be sued'" (emphasis added), and fallaciously concludes that "per the *plain, express language of the enabling statute of NRS 86.281*," a revoked LLC cannot "bring or maintain lawsuits." But the word "only" isn't in NRS 86.281, and it begs the question for the Washingtons to add it in. As a general powers statute, NRS 86.281 simply lists the things a Nevada LLC "may" do; it says nothing about what a revoked LLC may not do.

Last, the Washingtons argue that dismissal serves an important enforcement interest. In their view, allowing scofflaw entities to maintain suits rewards noncompliance, at the expense of other parties to the suit, who may face an uncollectible judgment or fee award against a defunct entity. But Chapter 86 specifies the penalties appropriate to impose for operating without a current charter, distinguishing between entities with lapsed charters and those doing business without ever having been properly formed. Doing business as an LLC without filing the initial organizational documents carries significant fines of up to $10,000. NRS 86.213(1). A revoked charter, by contrast, carries no fines, only a $75 penalty reinstatement fee. NRS 86.272(3). As for incentivizing judgment-proof LLCs to litigate with wanton abandon, NRS 86.361 provides that members of an unchartered entity risk individual liability unless the default is cured. *See Nichiryo Am., Inc. v. Oxford Worldwide, LLC*, No. 03:07-CV-00335-LRH-VPC, 2008 WL 2457935 (D. Nev. June 16, 2008); *see also Resort at Summerlin v. Dist. Ct.*, 118 Nev. 110, 40 P.3d 432 (2002) (interpreting NRS 80.210 (now NRS 80.055) to condition commencement and maintenance of a lawsuit for foreign corporations on *initial* qualification rather than continuous upkeep of its qualification). The Legislature has addressed the penalties for an administrative default leading to charter revocation and loss of capacity to sue is not among them.

For these reasons, we conclude that the district court erred when it dismissed AA Primo's suit based on its charter having been revoked.

## B.

NRS 86.276(5) provides a second, independently sufficient basis for reversal. When AA Primo succeeded in reinstating its charter, it brought itself under NRS 86.276(5). By its plain terms, this statute pardoned AA Primo's administrative default and restored its rights retroactive to the date of revocation:

> [A] reinstatement pursuant to this section relates back to the date on which the company forfeited its right to transact business under the provisions of this chapter and reinstates the company's right to transact business as if such right had at all times remained in full force and effect.

*Id.* As we have already held, AA Primo properly presented its reinstated charter to the district court by way of a timely NRCP 59(e) motion to alter or amend the judgment of dismissal. Although not separately appealable as a special order after judgment, an order denying an NRCP 59(e) motion is reviewable for abuse of discretion on appeal from the underlying judgment. *See* 11 C. Wright, A. Miller & M. Kane, *supra*, § 2818, at 188 (distinguishing between appealability and reviewability and noting that an order deciding a Rule 59(e) motion, while not independently appealable, is reviewable for abuse of discretion); *cf. Arnold v. Kip*, 123 Nev. 410, 168 P.3d 1050 (2007) (an order denying reconsideration may be reviewed on appeal from the underlying judgment).

While review for abuse of discretion is ordinarily deferential, deference is not owed to legal error. *See United States v. Silva*, 140 F.3d 1098, 1101 n.4 (7th Cir. 1998). Here, NRS 86.274(5) required the district court to treat AA Primo as if its charter had never been revoked. The judgment of dismissal remained modifiable and should have been vacated on motion by AA Primo. *Duncan v. Sunset Agricultural Minerals*, 78 Cal. Rptr. 339, 342 (Ct. App. 1969). It thus was an abuse of discretion not to have granted AA Primo's timely application for relief under NRS 86.276(5).

## C.

Finally, we note that the brief stay AA Primo requested would have given it time to reinstate its charter and avoided the delay and expense associated with dismissal, post-judgment motion practice,

and appeal. Dismissal is an unnecessarily costly penalty when the desired result—compliance with Nevada's fee and filing statutes—can be accomplished through a stay. *See Executive Mgmt.*, 118 Nev. at 52, 38 P.3d at 876.

We therefore reverse and remand. Since the reversal removes the predicate for fees and costs, their award is also reversed.

HARDESTY and DOUGLAS, JJ., concur.