IN THE SUPREME COURT OF THE STATE OF NEVADA

BRIGHTSOURCE ENERGY, INC., A
DELAWARE CORPORATION,
Appellant,
vs.
COYOTE SPRINGS INVESTMENT,
LLC, A NEVADA LIMITED LIABILITY
COMPANY,
Respondent.

No. 72273

FILED

JUN 2 8 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF REVERSAL AND REMAND*

This is an appeal from the final judgment in a contracts action. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

Appellant Brightsource Energy, Inc., and respondent Coyote Springs Investment, LLC, entered into a lease allowing Brightsource to build a solar power plant on Coyote Springs's land. That lease contained a provision that would allow Brightsource to terminate the lease, without paying a termination fee, under certain conditions:

> Lessee shall have the right to terminate this Lease as to the entire Property without paying a Lease Termination Fee if both of the following conditions apply:
>
> (i) Lessee serves written notice of termination upon Lessor no later than one (1) day before the earlier of (A) March 1, 2012, or (B) the date when an Approved Tower Height [as defined in Section 2.1(c)(ii)] of at least 650 feet "above ground level" [as such phrase is defined in the Code of Federal Regulations, Title 14, Part I, Section 1.2, which such definition shall be the one in effect as of the

19-27835

date of this Lease] ("AGL"), at each specific site or location for all of Lessee's towers on the Property is obtained by the Parties; and

(ii) Lessee determines, in its sole reasonable business judgment, that it is not feasible to proceed with the Project for one or more of the following reasons:

(A) an acceptable Transmission Solution [as defined in Section 2.1(c)(vi)] has not been established;

(B) an acceptable Approved Tower Height [as defined in Section 2.1(c)(ii)] has not been obtained.[1]

Section 2.1(c)(ii) of the lease defines "Approved Tower Height" as "the maximum number of feet [above ground level] that structures are permitted to be built, measured from the base of the tower to the top of the lightening rod," and Section 2.1(c)(viii) defines "Construction Permit" as "the first permit Lessee obtains from Lincoln County for any construction or construction related activity for the Project." Brightsource attempted to terminate the lease pursuant to these provisions, but Coyote Springs sued, arguing that Brightsource owed a termination fee because it sent the termination notice after the parties had achieved "Approved Tower Height."

At the summary judgment stage, the district agreed with Coyote Springs that the lease was unambiguous and that "Approved Tower Height" was achieved when the parties obtained a no-hazard determination from the Federal Aviation Agency (FAA). The parties then proceeded to trial on Brightsource's claim of mutual mistake regarding the "Transmission Solution" portion of the termination provision and, after an 11-day bench trial, the district court entered judgment in favor of Coyote

---

[1]All bracketed language in this quote appears in the lease.

Springs. After the district court entered an amended judgment and denied Brightsource's post-judgment motions, Brightsource filed the instant appeal.

I.

We disagree with the court's conclusion that the Approved Tower Height provision was not ambiguous. *See Margrave v. Dermody Props., Inc.*, 110 Nev. 824, 827, 878 P.2d 291, 293 (1994) (holding that whether a contract is ambiguous is a question of law reviewed de novo). The lease's definition for "Approved Tower Height" is the height the towers are "permitted to be built." And while not the same exact phrasing, in that same section, the lease uses "Construction Permit" specifically in reference to permits from Lincoln County, rather than an FAA determination. In fact, that section of the lease does not mention the FAA at all. Thus, on its face, the lease is ambiguous as to what permits were needed for the parties to achieve "Approved Tower Height." The parol evidence considered by the district court at summary judgment did not resolve this ambiguity. Earlier drafts of the lease referenced the FAA, but the parties later removed that language, with each side contradicting the other on why it was removed. Witnesses that participated in the lease negotiations also gave conflicting accounts of the parties' understanding of what must have occurred to achieve "Approved Tower Height." And, as argued by Brightsource, the lease could not be construed against either party as the lease specifically prohibits this and instead requires it to be "construed fairly, in accordance with its terms."

Because we cannot discern the lease's meaning as it pertains to "Approved Tower Height," it is ambiguous. *See Galardi*, 129 Nev. at 309, 301 P.3d at 366 (providing that an ambiguous contract is one that is obscure

in meaning). Furthermore, the district court erred by failing to enter a written order regarding its decision on the summary judgment motion. *See Rust v. Clark Cty. Sch. Dist.*, 103 Nev. 686, 689, 747 P.2d 1380, 1382 (1987) (holding that "only a written judgment has any effect"). We therefore reverse the district court's grant of summary judgment on that issue, *see Galardi*, 129 Nev. at 311-12, 301 P.3d at 367-68 (summary judgment is inappropriate in contract interpretation cases when the parties present conflicting evidence on the contract's meaning), and, because the final order was premised on this conclusion, we reverse the district court's final order as well. On remand, the parties must be permitted to present all relevant evidence to enable the district court to resolve the lease's ambiguity. *See M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 914, 193 P.3d 536, 545 (2008) (recognizing that parol evidence is admissible to ascertain the true intentions of parties to an ambiguous agreement).[2]

## II.

Brightsource next argues that the district court abused its discretion when it denied Brightsource's motions to preserve the testimony of a witness.[3] Brightsource requested that the court order the witness to prepare a written statement of his pertinent testimony, which Coyote Springs would hold until it was determined via writ petition to this court whether that testimony was inadmissible due to attorney-client privilege.

---

[2]Brightsource also argues that the district court abused its discretion in considering certain evidence in camera at the summary judgment stage, but we need not address this as we reverse the grant of summary judgment on other grounds.

[3]The parties are familiar with the facts regarding this issue, and we do not recount them here except as necessary to our decision.

We conclude that the district court did not abuse its discretion in denying this request. *See generally Davis*, 128 Nev. at 311, 278 P.3d at 508. Brightsource cites no law, and we can find none, that would require the district court to grant such a motion. Additionally, Coyote Springs' opposition to those motions is not akin to spoliation of or failure to preserve evidence that would warrant sanctions or an adverse inference against Coyote Springs. *See* NRS 47.250(3); *Bass-Davis v. Davis*, 122 Nev. 442, 448-50, 134 P.3d 103, 107-08 (2006); *Mishler v. State, Bd. of Med. Exam'rs*, 109 Nev. 287, 294-95, 849 P.2d 291, 295-96 (1993).

## III.

Brightsource next argues that the district court erred in concluding that there was insufficient evidence to support its mutual mistake defense. To the extent that this argument is cogently developed, *cf. Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (noting that this court need not consider claims that are not supported by relevant authority), we agree with the district court that Brightsource failed to present clear and convincing evidence of a mutual mistake to warrant reformation of the lease and therefore affirm that decision. *See Realty Holdings, Inc. v. Nev. Equities, Inc.*, 97 Nev. 418, 419-20, 633 P.2d 1222, 1223 (1981) (quoting *Roberts v. Hummel*, 69 Nev. 154, 158, 243 P.2d 248, 250 (1952), for the proposition that a court has the equitable power to "reform a written instrument where it appears that there has been . . . [a] mistake which has brought about a writing not truly representing the actual agreement of the parties"); *see also Grappo v. Mauch*, 110 Nev. 1396, 1398, 887 P.2d 740, 741 (1994) (requiring clear and convincing evidence of mutual mistake in order to reform a deed of trust).

IV.

Finally, we address Brightsource's argument that the district court abused its discretion in denying its post-judgment motions for new trial or to amend the final judgment. *See Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 74, 319 P.3d 606, 611 (2014) (reviewing orders regarding motions for new trial for an abuse of discretion); *AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010) (reviewing orders regarding motions to amend judgments for an abuse of discretion). To the extent these motions challenged the district court's interpretation of "Approved Tower Height" and its definition, we have already addressed those arguments. In its motion to amend the final judgment Brightsource also argued, however, that the court erred in finding insufficient evidence to support Brightsource's mutual-mistake defense, when that insufficiency was only due to the district court's failure to preserve a witness's testimony. *See* NRCP 59(e); *AA Primo Builders*, 126 Nev. at 582, 245 P.3d at 1192-93 (stating the grounds for amending a judgment). This does not warrant amending the judgment because, as discussed above, the district court did not abuse its discretion in denying Brightsource's motions to preserve the testimony.

Brightsource also challenges the district court's conclusion that, to terminate the lease without paying a termination fee, it had to give its notice of termination before achieving "Approved Tower Height," rather than concluding that Brightsource could terminate without paying a termination fee if it terminated before achieving an "Approved Tower Height" *or* achieving a "Transmission Solution." As support for this, Brightsource cites to one of the district court's factual findings: "In February 2011, [Coyote Springs's] manager . . . told [Brightsource] that he believed that both tower height and transmission had been achieved, so

[Brightsource] could not terminate without paying a termination fee, reflecting his understanding that both had to be achieved before [Brightsource]'s no-fee termination right would end." The fallacy in Brightsource's argument is that one person's statement about what he "believed" was in the lease, especially when stated nearly a year after the lease was signed, is not convincing evidence as to what the parties actually intended. And, in this portion of the district court's order, it appears that the district court is merely reciting the various pieces of evidence that were relevant to the issues before the court, rather than identifying what evidence it found most convincing. We therefore conclude that the district court did not abuse its discretion in denying the motion to amend on this basis. *See AA Primo Builders*, 126 Nev. at 589, 245 P.3d at 1197.

Based on the foregoing, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. Elizabeth Goff Gonzalez, District Judge
Stephen E. Haberfeld, Settlement Judge
Kennedy & Couvillier, PLLC
Kaempfer Crowell/Las Vegas
Robison, Sharp, Sullivan & Brust
Eighth District Court Clerk